(No. 90891.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lant, v. CLIFTON MORGAN, Appellee.

*Opinion filed January 24, 2003.—Rehearing denied*
*March 31, 2003.*

472

RARICK, J., took no part.
THOMAS, J., joined by KILBRIDE, J., dissenting.

James E. Ryan and Lisa Madigan, Attorneys General, and John Schmidt, State's Attorney, both of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers, Lisa A. Hoffman and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Susan M. Wilham and Robert N. Markfield, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

In the present appeal, we consider the constitutionality of the attempt statute (720 ILCS 5/8—4 (West 2000)), as amended by Public Act 91—404 (Pub. Act 91—404, § 5, eff. January 1, 2000). Public Act 91—404 amended the sentencing provisions of the offense of attempted first degree murder by adding what has been referred to as the "15-20-25 to life" provisions. The circuit court of Sangamon County ruled that the attempt statute, as amended, is unconstitutional because the "15-20-25 to life" sentencing provisions mandate penalties for the offense of attempted first degree murder that violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Interpreting the circuit court's order as effectively dismissing the charge of at-

tempted first degree murder against defendant, Clifton Morgan, the State appeals the circuit court's ruling directly to this court, pursuant to Supreme Court Rules 603 and 604(a)(1) (134 Ill. 2d R. 603; 188 Ill. 2d R. 604(a)(1)). For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

On July 27, 2000, an information was filed in the circuit court of Sangamon County, charging defendant with one count of aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 2000)), one count of attempted armed robbery (720 ILCS 5/8—4, 18—2(a) (West 2000)), and one count of attempted first degree murder (720 ILCS 5/8—4, 9—1 (West 2000)). The charging instrument, read as a whole, alleged that defendant "performed a substantial step toward the commission of [armed robbery] in that said defendant went to the residence of Willie Davis, armed with a handgun, with the intent to rob Willie Davis"; that defendant "knowingly performed a substantial step toward the commission of [the offense of first degree murder] in that he, with the intent to kill Willie Davis, shot a handgun at Willie Davis"; and "by means of discharging a firearm, caused an injury to Willie Davis."

On November 15, 2000, defendant filed a motion in the circuit court, seeking the dismissal of the information charging him with attempted first degree murder. Defendant argued that the mandatory enhancement sentencing scheme for the offense of attempted first degree murder, as set forth in subsections (c)(1)(B), (c)(1)(C), and (c)(1)(D) of the attempt statute (720 ILCS 5/8—4(c)(1)(B), (c)(1)(C), (c)(1)(D) (West 2000)), is unconstitutional because it violates the separation of powers clause of article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, § 1) and imposes penalties which violate the proportionate penalties clause

of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant also maintained that the sentencing scheme: (1) violates the due process and equal protection clauses of the United States Constitution and the Illinois Constitution; (2) is void for vagueness; and (3) requires penalties for the offense of attempted first degree murder which (a) constitute cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and article I, section 11, of the Illinois Constitution; (b) punish a defendant twice for the same conduct, in violation of the double jeopardy clauses of the fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution; and (c) violate the law against double enhancement.

Ruling on defendant's motion, the circuit court declared the amended attempt statute unconstitutional on proportionality grounds, stating:

"In applying the constitution's proportionality test to the sentencing ranges involved, I believe the required sentences shock the moral sense of the community. As a result, this court rules that the foregoing referenced statutory provisions are unconstitutional."

The State appealed directly to this court, pursuant to Supreme Court Rules 603 and 604(a)(1) (134 Ill. 2d R. 603; 188 Ill. 2d R. 604(a)(1)).

## ANALYSIS

We begin our analysis with an examination of the attempt statute, which is at issue in this appeal. Since the adoption of the Criminal Code of 1961, Illinois law has provided that the offense of attempt is committed when a person, "with intent to commit a specific offense, *** does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8—4(a) (West 2000). This general attempt provision presumptively applies to all offenses (*People v. Wallace*, 57 Ill. 2d

285, 290-91 (1974); *People v. Taylor*, 314 Ill. App. 3d 943, 945-46 (2000); 720 ILCS Ann. 5/8—4, Committee Comments—1961, at 438 (Smith-Hurd 1993)) and it is no defense to a charge of attempt that, due to a misapprehension of the circumstances, it would have been legally or factually impossible to commit the principal offense. 720 ILCS Ann. 5/8—4, Committee Comments—1961, at 437-38 (Smith-Hurd 1993).

The attempt statute provides that, as a general matter, the penalty for committing an attempt may not exceed the maximum penalty for the offense attempted. 720 ILCS 5/8—4(c) (2000). The statute further specifies that, when the offense attempted is designated a Class X felony, the attempt will be sentenced as a Class 1 felony; when the offense attempted is designated a Class 1 felony, the attempt will be sentenced as a Class 2 felony; when the offense attempted is designated a Class 2 felony, the attempt will be sentenced as a Class 3 felony; and when the offense attempted does not fall within one of the specified categories, the attempt will be sentenced as a Class A misdemeanor. 720 ILCS 5/8—4(c)(2), (c)(3), (c)(4), (c)(5) (West 2000).

Special sentencing rules apply, however, when the offense attempted is first degree murder. Under ordinary circumstances, the offense of attempted first degree murder is to be sentenced as a Class X felony, which carries a sentencing range of 6 to 30 years. 720 ILCS 5/8—4(c)(1) (West 2000); 730 ILCS 5/5—8—1(a)(3) (West 2000). If certain aggravating factors are present, however, the sentencing range is increased to a minimum of 20 years and a maximum of 80 years. 720 ILCS 5/8—4(c)(1)(A) (West 2000).

Effective January 1, 2000, the attempt statute was amended by Public Act 91—404, which added the following provisions:

"(B) an attempt to commit first degree murder while armed with a firearm is a Class X felony for which 15 years

shall be added to the term of imprisonment imposed by the court;

(C) an attempt to commit first degree murder during which the person personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court;

(D) an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/8—4(c)(1)(B), (c)(1)(C), (c)(1)(D) (West 2000).

Accordingly, the attempt statute, as amended, requires the offense of attempted first degree murder to be sentenced as a Class X felony with the mandatory addition of 15 years, 20 years or 25 years to life, based on the extent to which a handgun was involved in the commission of the offense. 720 ILCS 5/8—4(c)(1)(B), (c)(1)(C), (c)(1)(D) (West 2000).

As noted above, the general attempt provision is ordinarily applicable to all offenses. However, there are exceptions. Where application of the attempt provision to a principal offense creates an inherent impossibility, the offense cannot exist. See *People v. Viser*, 62 Ill. 2d 568, 581 (1975) (attempt statute not applicable to felony-murder statute).

Applying this principle, it was determined in *People v. Reagan*, 99 Ill. 2d 238 (1983), that the offense of attempted voluntary manslaughter was inherently impossible. In *Reagan*, the defendant was charged with three counts of attempted murder and three counts of armed violence. Defendant raised the affirmative defense of self-defense and was acquitted of attempted murder. Instead, defendant was found guilty of three counts of attempted voluntary manslaughter based on imperfect self-defense. Defendant appealed his convictions, arguing that the of-

fense of attempted voluntary manslaughter did not exist. The appellate court agreed and reversed defendant's convictions, holding that it was inherently impossible to commit the offense of attempted voluntary manslaughter.

On review, this court affirmed the appellate court's judgment. Viewing the attempt statute in conjunction with the voluntary manslaughter statute, this court reasoned that, because the offense of attempt requires the intent to commit a "specific offense," an attempt to commit voluntary manslaughter necessarily would require a person "to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense." *Reagan*, 99 Ill. 2d at 240. Finding it inherently impossible to intend an unreasonable belief, this court concluded that the offense of attempted voluntary manslaughter did not exist. *Reagan*, 99 Ill. 2d at 240. See also *Viser*, 62 Ill. 2d at 581 ("[t]here is no such criminal offense as an attempt to achieve an unintended result").

After *Reagan* was decided, the legislature enacted Public Act 84—1450 (Pub. Act 84—1450, eff. July 1, 1987), amending the laws of this state with regard to murder. As noted in *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995), the legislature, intending to remedy "the confusion and inconsistency that had developed in regard to the murder and voluntary manslaughter statutes," renamed the offense of murder to first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1, now codified at 720 ILCS 5/9—1 (West 2000)), abolished the offense of voluntary manslaughter and created the offense of second degree murder to take its place (Ill. Rev. Stat. 1987, ch. 38, par. 9—2, now 720 ILCS 5/9—2 (West 2000)). Second degree murder was defined by statute as first degree murder plus the existence of one of two possible statutory mitigating circumstances. 720 ILCS 5/9—2 (West

2000).[1] This meant that a defendant charged with first degree murder could raise, as an affirmative defense, the existence of a statutory mitigating circumstance and bear the burden of proving its existence. If successful, the defendant would be found guilty of the lesser offense of second degree murder. *People v. Lopez*, 166 Ill. 2d 441, 447 (1995).

With the creation of this new second degree murder statute, a conflict arose over the application of the attempt statute. Some courts held that it was not inherently impossible to apply the attempt statute to second degree murder, while other courts disagreed. In *Lopez*, this court resolved the conflict, holding that it was inherently impossible to commit attempted second degree murder and, for that reason, the offense of attempted second degree murder, like attempted voluntary manslaughter, did not exist under the laws of this state.

In *Lopez*, this court reviewed the consolidated appeals of two defendants who had been convicted of attempted first degree murder. Both defendants had introduced evidence of mitigating circumstances at their trials and, in both cases, the trial courts refused to instruct the juries on attempted second degree murder, ruling that no such offense existed. The appellate court panels affirmed. On review, a majority of this court affirmed the convictions, agreeing with the lower courts that the offense of attempted second degree murder did

---

[1] The statutory mitigating factors are:

    "(1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or

    (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

not exist under Illinois law. This court explained that it was the wording of the attempt statute, not the wording of the second degree murder statute, which led to the conclusion that attempted second degree murder is an offense that is inherently impossible to commit.

Looking to the language in subsection (a) of the attempt statute, we noted in *Lopez* that the offense of attempted second degree murder, if it existed, would require a showing that the defendant intended to commit the "specific offense" of second degree murder. See 720 ILCS 5/8—4(a) (West 2000); *Lopez*, 166 Ill. 2d at 449. Second degree murder, like first degree murder, requires the intent to kill, but also requires the presence of a mitigating circumstance which reduces the defendant's culpability and, accordingly, the applicable sentencing range. 720 ILCS 5/9—2 (West 2000). This court then reasoned that, "for an attempted second degree murder, the defendant must intend the presence of a mitigating factor, which is an impossibility." *Lopez*, 166 Ill. 2d at 449.

It was argued in *Lopez* that the failure to recognize attempted second degree murder as an offense rendered the attempt statute unconstitutional under the proportionate penalties clause of the Illinois Constitution. In support of this argument, defendants pointed out that, if attempted second degree murder was not a recognized offense, a person who acted with the intent to kill, but failed to cause the death of the victim, would necessarily be convicted of attempted *first degree* murder, a Class X felony, punishable by a term of imprisonment between 6 and 30 years (720 ILCS 5/8—4(c)(1) (West 2000); 730 ILCS 5/5—8—1(a)(3) (West 2000)), whether or not mitigating circumstances existed. At the same time, however, if a person acted with the intent to kill and succeeded in killing the victim, the person, having been charged with first degree murder, would have the op-

portunity to reduce his culpability, as well as the applicable sentencing range, by introducing evidence that mitigating circumstances existed. If successful in proving the mitigating circumstances, the person would be convicted of the lesser offense of second degree murder, a Class 1 felony, punishable at that time by a term of imprisonment between 4 and 15 years (720 ILCS 5/9—2(d) (West 1992)) or, perhaps, a term of probation (730 ILCS 5/5—6—1 (West 1992)). Thus, defendants argued, the failure to recognize attempted second degree murder as an offense resulted in the possibility that a defendant would be sentenced to a greater term of imprisonment if the victim lived than if the victim died. *Lopez*, 166 Ill. 2d at 450. On this basis, defendants argued that the penalty for attempted first degree murder was disproportionate to the severity of the offense.

This court acknowledged in *Lopez* that, where mitigating circumstances are present, a defendant who intends to kill is subject to a greater sentencing range when the victim lives than when the victim dies. Nonetheless, this court held that the attempt statute was not rendered unconstitutional. Although the sentencing range for attempted first degree murder was broader than the sentencing range for second degree murder, the sentencing range for attempted first degree murder encompassed the sentencing range for second degree murder. Thus, we concluded, "the disparity in sentencing range here is [not] cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." *Lopez*, 166 Ill. 2d at 450-51. Moreover, we held that, in the absence of a proportionate penalties violation, the wording of the attempt statute, which required us to hold that attempted second degree murder could not exist as an offense in this state, was a matter better addressed to the legislature. *Lopez*, 166 Ill. 2d at 449-50.

Against this backdrop, we are now asked to consider the validity of the attempt statute as amended by Public Act 91—404. The Act creates a mandatory sentencing scheme which increases the penalty for the offense of attempted first degree murder based on the extent to which a firearm is involved in the commission of the offense. Pursuant to the amended statute, a defendant whose actions demonstrate an intent to kill, but do not result in death, is subject to sentencing ranges of 21 to 45 years, 26 to 50 years, or 31 years to natural life, depending on whether a firearm was in the defendant's possession, discharged, or the cause of bodily harm. At the same time, however, no provision has been made for one charged with attempted first degree murder to introduce mitigation evidence. Accordingly, the mandatory enhanced sentencing ranges created by the Act are applicable without regard to whether defendant acted under extreme provocation or while possessing an unreasonable belief that his actions were necessary for his defense.

Defendant argues here, as he did before the circuit court, that the attempt statute has been rendered unconstitutional by the addition of this mandatory enhanced sentencing scheme. The circuit court ruled that, because the mandatory enhanced sentencing ranges are applicable whether or not defendant acted under extreme provocation or while possessing an unreasonable belief that his actions were necessary for his defense, the sentencing scheme, as set forth in subsections (c)(1)(B), (c)(1)(C), and (c)(1)(D) of the attempt statute, violates the proportionate penalties clause of our state constitution, which requires the legislature to proportion penalties "according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11; *People v. Lombardi*, 184 Ill. 2d 462, 474 (1998). We agree.

### Standing

As an initial matter, we address the issue of defen-

dant's standing. In the case at bar, the information filed against defendant, read in its entirety, alleges that during the commission of the offense of attempted first degree murder defendant was armed with a firearm and that he discharged the firearm, striking Willie Davis and causing him injury. The State maintains that, based on the facts alleged in the information, defendant will be directly affected only by the "25 to life" mandatory enhanced sentencing provision in subsection (c)(1)(D) of the attempt statute and, therefore, defendant has no standing to challenge the constitutionality of the sentencing provisions contained in subsections (c)(1)(B) and (c)(1)(C). Accordingly, the State argues that this court must restrict its review to the question of whether the mandatory enhanced sentence of 25 years or up to a term of natural life, required by section 8—4(c)(1)(D), violates the proportionate penalties clause of the Illinois Constitution. We disagree.

The general rule is that courts will not consider the validity of a statutory provision unless the person challenging the provision is directly affected by it or the unconstitutional feature is so pervasive as to render the entire statute invalid. *People v. Palkes*, 52 Ill. 2d 472, 480-81 (1972); *Huckaba v. Cox*, 14 Ill. 2d 126 (1958); *People v. Reiner*, 6 Ill. 2d 337 (1955). In either case, a party has standing to bring a constitutional challenge only if the party is able to show himself to be within the class aggrieved by the alleged unconstitutionality. *People v. Mayberry*, 63 Ill. 2d 1, 6 (1976); see *People v. Sonntag*, 238 Ill. App. 3d 854, 858 (1992).

Here, the information charges defendant with committing the offense of attempted first degree murder. If convicted of that charge, defendant will be eligible to receive one of the several penalties provided for in subsection (c)(1) of the statute. The "15-20-25 to life" sentencing scheme is contained in subsection (c)(1) and

provides for increasingly severe penalties depending on the extent to which a firearm is used in the commission of the offense. Thus, in the case at bar, the proper penalty to be imposed will depend on whether the evidence adduced at trial shows that defendant, while taking a substantial step toward the commission of the offense of first degree murder, was in possession of a firearm, discharged a firearm, or discharged a firearm causing serious injury. The facts alleged in the information bring defendant within the scope of the entire "15-20-25 to life" sentencing scheme, placing him at risk of being sentenced to any of the mandatory enhancements. Accordingly, defendant has sufficiently shown himself to be among the class of persons directly affected by the allegedly unconstitutional sentencing scheme in its entirety.

We acknowledge that, in *People v. Hill*, 199 Ill. 2d 440 (2002), this court declined to examine in its entirety a similar "15-20-25 to life" sentencing scheme. However, the facts of that case distinguish it from the matter at bar. In *Hill*, the defendant was charged with violating a specific provision of the home invasion statute, section 12—11(a)(3) of the Criminal Code, which provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

＊ ＊ ＊

(3) While armed with a firearm uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs[.]" 720 ILCS 5/12—11(a)(3) (West 2000).

As provided in subsection (c) of the home invasion statute, "[a] violation of subsection (a)(3) is a Class X felony for which 15 years shall be added to the term of

imprisonment imposed by the court." 720 ILCS 5/12—11(c) (West 2000).

The charges filed against the defendant in *Hill* made it clear that only the 15-year mandatory enhancement provision was implicated. There was no risk that the defendant in *Hill*, if convicted of the offense charged, would be sentenced under any other sentencing provision of the "15-20-25 to life" sentencing scheme. Accordingly, this court held that the defendant in *Hill* had no standing to challenge the constitutionality of the sentences attached to the distinctly separate and uncharged offenses set forth in sections 12—11(a)(4) and 12—11(a)(5) of the Code (720 ILCS 5/12—11(a)(4), (a)(5) (West 2000)). *Hill*, 199 Ill. 2d at 445-46. See also *People v. Falbe*, 189 Ill. 2d 635, 644 (2000) (defendants do not have standing to challenge a statute as it might be applied to others).

Unlike the situation in *Hill*, however, the charged offense in the case at bar does not limit defendant's exposure to a single sentence. If convicted of the offense charged, defendant, in the case at bar, may be sentenced under any provision of the "15-20-25 to life" sentencing scheme, depending on the facts proved at trial. Thus, we conclude that the defendant here has standing to challenge the constitutionality of the sentencing scheme in its entirety.

There is another matter which we feel compelled to address, although the parties have not raised it. Defendant argues, and the circuit court found, that the attempt statute, as amended, is unconstitutional under the proportionate penalties clause when mitigating circumstances exist which would have reduced the underlying offense of first degree murder to second degree murder. The circuit court found that, when mitigating circumstances are present, the mandatory enhanced sentencing scheme subjects a defendant convicted of attempted first

degree murder to penalties which are not set according to the seriousness of the offense. In the case at bar, however, defendant is challenging the constitutionality of the statute prior to trial and, thus, he has not yet alleged or established the existence of statutory mitigating circumstances in this case. Thus, one might suggest that defendant's constitutional challenge comes too soon. We find, however, that defendant's challenge to the constitutionality of the attempt statute at this juncture is not premature.

Defendant's challenge to the constitutionality of the attempt statute is rooted in the fact that attempted second degree murder is not a recognized offense in this state and, barring its existence, the presence of mitigating circumstances is not relevant to a charge of attempted first degree murder. Thus, as a practical matter, the defendant here, like every defendant charged with attempted first degree murder, may be prevented from introducing mitigating evidence at trial. In other words, because defendant's culpability cannot be reduced by proof that he acted under extreme provocation or while possessing an unreasonable belief that his actions were necessary for his defense, there would be no purpose for introducing this type of mitigation evidence at trial and defendant may be foreclosed from doing so. Moreover, even should defendant be able to introduce mitigation evidence at trial, because attempted second degree murder is not a recognized offense, the jury would never be instructed to consider whether the mitigation evidence was sufficient to reduce defendant's culpability. Defendant would never have the opportunity to have a jury decide whether he acted under extreme provocation or while possessing an unreasonable belief that his actions were necessary for his defense. For this reason, defendant may be in no better position after trial to argue the unconstitutionality of the statute and the matter may

evade appellate review. Further, denying defendant the opportunity to challenge the constitutionality of the attempt statute at this juncture would hamper his ability to shape a defense to the charge of attempted first degree murder. Thus, we conclude that, in the case at bar, defendant's challenge to the constitutionality of the statute is not premature.

## Constitutionality

Turning now to the central issue in this appeal, we consider whether the circuit court was correct when it found that the attempt statute, as amended by Public Act 91—404, unconstitutionally violates the proportionate penalties clause of the Illinois Constitution. The standard by which we review a court's ruling that a statute is unconstitutional is *de novo. People v. Carney*, 196 Ill. 2d 518, 526 (2001); *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). We begin our assessment with the understanding that all statutes carry a strong presumption of constitutionality. *People v. Wright*, 194 Ill. 2d 1, 24 (2000); *People v. Maness*, 191 Ill. 2d 478, 483 (2000). To overcome this presumption, the party challenging the statute bears a heavy burden of clearly establishing its constitutional infirmities. *People v. Kimbrough*, 163 Ill. 2d 231, 237 (1994). Any reasonable construction which affirms a statute's constitutionality must be adopted, and any doubt regarding a statute's construction must be resolved in favor of the statute's validity. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 32 (2001); *People v. Shephard*, 152 Ill. 2d 489, 499 (1992).

When analyzing whether a proportionate penalties violation has been demonstrated, the ultimate issue is whether the penalty attached to the offense has been set by the legislature "according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. In *People v. Lombardi*, 184 Ill. 2d 462, 474 (1998), we discussed three analyses which courts have employed when assessing

proportionality claims: (1) whether the penalty is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community (*People v. Bailey*, 167 Ill. 2d 210, 236 (1995); *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962)); (2) whether the described offense, when compared to a similar offense, carries a more severe penalty although the proscribed conduct creates a less serious threat to the public health and safety (*People v. Davis*, 177 Ill. 2d 495, 503 (1997); *People v. Farmer*, 165 Ill. 2d 194, 210 (1995); *People v. Wisslead*, 94 Ill. 2d 190, 194-97 (1983)); or (3) whether the described offense, when compared to an offense having identical elements, carries a different sentence (*People v. Lewis*, 175 Ill. 2d 412, 417-18 (1996)). These three analyses provide the general framework for evaluating whether a proportionate penalties clause violation has been established.

In the case at bar, the circuit court, applying the first prong of the *Lombardi* test, held that the attempt statute, as amended by Public Act 91—404, violates the proportionate penalties clause of our state constitution. Ill. Const. 1970, art. I, § 11. More specifically, the circuit court found that, because the statute does not permit the introduction of statutory mitigating factors, the penalties imposed on one convicted of attempted first degree murder under the mandatory enhanced sentencing scheme are not set according to the seriousness of the offense. In other words, because the mandatory enhancements to the sentencing range for an attempted first degree murder conviction are added without regard to whether mitigating circumstances are present, the penalties for that offense are, in some instances, so disproportionate to the offense committed that they " ' "shock the moral sense of the community." ' " *Bailey*, 167 Ill. 2d at 236, quoting *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962), quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421-22 (1894).

Initially, we acknowledge that the legislature has the authority to set the nature and extent of criminal penalties and that courts may not interfere with such legislation unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable. *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537, 542 (1981). We further acknowledge that the legislative purpose for enacting Public Act 91—404 is the deterrence of the use of firearms in the commission of offenses. The presence of firearms during the commission of an offense always poses an extreme danger, not only to intended victims, but also to innocent bystanders. Thus, we will not second-guess the legislature's determination that the protection of society necessitates the imposition of severe penalties whenever a firearm is used in the course of an offense. See *Hill*, 199 Ill. 2d at 457-58. Thus, we cannot say that, where mitigating circumstances are not present, it would be cruel, degrading or so wholly disproportionate to the offense committed to subject a defendant who commits the offense of attempted first degree murder to mandatory add-on sentences of 15 years, 20 years or 25 years to life, depending on whether a firearm is present, discharged or the cause of bodily injury. Nor would the imposition of these penalties run counter to the general sentencing directive that "the penalty for committing an attempt may not exceed the maximum penalty for the offense attempted." The penalty for first degree murder is a term of imprisonment between 20 and 60 years (730 ILCS 5/5—8—1(a)(1)(a) (West 2000)), which must be enhanced by the addition of 15 years, 20 years, or 25 years to life, depending on whether the defendant, in committing the offense, was in the possession of a firearm, discharged a firearm, or caused bodily injury or death as a result of the use of a firearm (730 ILCS 5/5—8—1(a)(1)(d) (West 2000)). We conclude, then, that the mandatory enhanced sentencing

scheme added to the offense of attempted first degree murder does not make the penalty for committing an attempt exceed the maximum penalty for the offense attempted and, therefore, the penalty is not inherently unconstitutional.

As the circuit court recognized, however, the difficulty stems from the fact that the wording of the attempt statute makes the offense of attempted second degree murder an inherent impossibility. For this reason, where the offense attempted would otherwise constitute second degree murder (*i.e.*, first degree murder where mitigating circumstances are present), the defendant cannot be convicted of attempted second degree murder, but must be convicted of attempted first degree murder. Accordingly, it is possible, as we acknowledged in *Lopez*, that the penalty for the attempt will exceed the maximum penalty for the actual underlying offense, *i.e.*, second degree murder. Under the statutory scheme, when a firearm is *not* involved in the commission of the offense, the penalty for attempted first degree murder is not so disparate that the statute is rendered unconstitutional by the defendant's inability to prove the existence of mitigating circumstances. However, when a firearm *is* involved in the offense and the mandatory enhanced sentencing scheme applies, the penalty ranges for attempted first degree murder far exceed the penalty range for second degree murder. Because the enhanced penalties apply without regard to the defendant's ability to prove the existence of mitigating circumstances, we conclude that the attempt statute is rendered unconstitutional.

When Public Act 91—404 was enacted, the wording of the general attempt provision was not changed and, accordingly, the offense of attempted second degree murder remains an inherent impossibility. Moreover, no provision was made for the introduction of mitigating

evidence that would lessen a defendant's culpability for an attempted first degree murder. Instead, the Act created a mandatory enhanced sentencing scheme that substantially increases the penalty for attempted first degree murder when a firearm is involved in the offense. Under the amended statute, then, a defendant whose actions would have resulted in a conviction for second degree murder if the victim died, must be convicted of attempted first degree murder if the victim lives. In addition, when a gun is used in the commission of the offense, the defendant will be subject to the mandatory enhanced sentencing scheme. As a result, based on the statute as it is now written, where mitigating circumstances exist the penalty for an *attempt* to commit murder involving the use of a firearm will *always* be greater than the penalty for the underlying offense committed, *i.e.*, second degree murder.

The inequity of the situation created by the amended attempt statute is graphically demonstrated by the example proposed by the circuit court judge in this case. The court stated:

"Assume that we have a woman who has suffered physical abuse at the hands of her husband or boyfriend for many years. After growing tired of this abuse, she decides to stop the cycle of abuse by killing her companion and decides to kill her companion with a firearm. While her decision to kill her companion is unlawful, her decision to kill him with a firearm is understandable since most women will not fare well in the attempt to kill a man with a knife or a club. This is not an unusual situation and several women have been charged with murder under similar circumstances in Central Illinois in the recent past. *** In this example, if the woman is successful in killing her companion, the mitigation factors can be raised, and there is some possibility that a jury could return a verdict of [s]econd [d]egree [m]urder. But *** if the woman fails to kill her companion, but does inflict serious bodily harm on him, she faces a minimum sentence of 31 years. She has

made a terrible mistake in not making sure that she has killed her companion!"

As the above example makes clear, under the current laws of this state, the defendant who intends to kill and, while using a firearm, succeeds in killing his or her victim has the opportunity to present mitigation evidence, the proof of which will result in a conviction on the lesser offense of second degree murder and, accordingly, exposure to a sentencing range of 4 to 20 years. If the victim does not die, however, the defendant is foreclosed from presenting mitigating evidence in the hopes of securing a conviction on a lesser offense and, correspondingly, a lesser sentence. In fact, where mitigating circumstances are present, the defendant who possesses a gun with the intent to kill and who takes a substantial step toward the commission of the offense of murder will be subject to a sentencing range where the *minimum* sentence is one year greater than the *maximum* sentence available if the same defendant actually fired the gun and caused the victim's death.

In sum, we find the attempt statute (720 ILCS 5/8—4 (West 2000)), as amended by Public Act 91—404, is unconstitutional because it permits a defendant convicted of attempted first degree murder to be subject to penalties that are not set according to the seriousness of the offense. The amended statute provides that a defendant who intends to kill but fails to cause the death of his victim shall be convicted of attempted first degree murder, whether or not mitigating circumstances exist, and shall be sentenced to a term of imprisonment between 6 and 30 years, with the mandatory addition of 15 years, 20 years, or 25 years to life, depending on whether a firearm was in defendant's possession, discharged, or the cause of bodily harm or the death of another. At the same time, a defendant who intends to kill *and succeeds in causing the death of the victim*, whether or not a firearm is used in the commission of

the offense, will be subject to a sentencing range of 4 to 20 years (730 ILCS 5/5—8—1(1.5) (West 2000)) and may even be eligible for a sentence of probation (730 ILCS 5/5—6—1 (West 2000)) if the defendant can demonstrate that he acted under serious provocation or while possessing the unreasonable belief that self-defense was necessary. Thus, under the current attempt statute, persons whose actions are identical may be exposed to vastly disparate sentences depending on whether the victim lives or not. Moreover, the irony is that the person who fails to kill his victim stands to be sentenced to a much *greater* sentence than the person who actually causes the death of his victim. For these reasons, we find the attempt statute (720 ILCS 5/8—4 (West 2000)), as amended by Public Act 91—404, unconstitutional.

Because we find that the attempt statute violates the proportionate penalties clause of this state's constitution, we need not consider defendant's alternative argument, that the amended attempt statute violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

## CONCLUSION

For the reasons stated, we find that the sentencing ranges created by the amended attempt statute violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Accordingly, we find the attempt statute (720 ILCS 5/8—4 (West 2000)), as amended by Public Act 91—404, adding the "15-20-25 to life" sentencing provisions to the offense of attempted first degree murder, to be unconstitutional.

The judgment of the circuit court is affirmed.

*Affirmed.*

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE THOMAS, dissenting:

Although the majority finds that the enhanced sentencing scheme for attempted first degree murder is not inherently unconstitutional, it nonetheless concludes that the statute is unconstitutional because it violates the proportionate penalties clause of the Illinois Constitution of 1970. Specifically, the majority finds that attempted first degree murder carries a more severe penalty than a similar offense, second degree murder, even though attempted first degree murder creates a less serious threat to the public health and safety. I believe the majority erred in comparing attempted first degree murder with second degree murder for purposes of the proportionate penalties analysis. Accordingly, I respectfully dissent from the majority opinion.

As noted, the analysis used by the majority in finding that the statute violates the proportionate penalties clause is whether the described offense, when compared with a similar offense, carries a more severe penalty even though the proscribed conduct creates a less serious threat to the public health and safety. This analysis applies a two-step, cross-comparison analysis. *People v. Hill*, 199 Ill. 2d 440, 454 (2002). The first step considers whether the purposes of the compared offenses are distinct such that comparative proportionality review is not appropriate. *Hill*, 199 Ill. 2d at 454. If the purposes are deemed related, the second step considers whether the offense with the harsher penalty is more serious than the offense with the less severe penalty. *Hill*, 199 Ill. 2d at 454.

The majority does not address the first step of the proportionate penalties analysis: whether the compared offenses share a common statutory purpose. Instead, the majority simply addresses the second step of the proportionate penalties analysis and concludes that the offense with the harsher penalty is less serious than the offense

with the less severe penalty. The majority's failure to address the first step is significant, because the purposes of the compared offenses are distinct. Absent a shared statutory purpose, there is no need to reach the second step of the analysis.

That the compared offenses do not share a common statutory purpose is evident from the language of the respective statutes. A person commits an attempt when he acts "with intent to commit a specific offense." 720 ILCS 5/8—4(a) (West 2000). The relevant portion of the first degree murder statute provides that a person commits first degree murder when he "kills an individual without lawful justification" and in performing the acts that cause the death, he "intends to kill *** that individual or another." 720 ILCS 5/9—1(a) (West 2000). In contrast, the second degree murder statute provides that a person commits second degree murder when he commits the offense of first degree murder and one of two mitigating circumstances are present. 720 ILCS 5/9—2(a) (West 2000). Those mitigating circumstances are where the defendant is "acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed" (720 ILCS 5/9—2(a)(1) (West 2000)) or where at the time of the killing the defendant "believes the circumstances to be such that, if they existed, would justify or exonerate the killing" (720 ILCS 5/9—2(a)(2) (West 2000)).

The attempt to commit first degree murder statute, then, is directed at those intending, albeit unsuccessfully, to kill without lawful justification. In contrast, the second degree murder statute is directed against those who, although perhaps intending to kill and succeeding in doing so, do *not* intend to kill unlawfully. There is a significant difference between the conduct at issue in

each statute, particularly with regard to the mind-set of the perpetrator. Because the two statutes are directed at entirely different mental states and conduct, the two statutes do not share a common statutory purpose. Consequently, in light of the distinct purposes of the compared offenses, comparative proportionality review of those offenses is not appropriate.

I also disagree with the majority's comparison of attempted first degree murder with the crime of second degree murder because I believe the majority is essentially resurrecting the offense of attempted second degree murder, an offense that this court declined to recognize in *People v. Lopez*, 166 Ill. 2d 441 (1995). In *Lopez*, we noted that attempted first degree murder requires the intent to kill without lawful justification. *Lopez*, 166 Ill. 2d at 445. We observed in *Lopez* that under the prior voluntary manslaughter statute, if a person attempted to kill someone but believed the circumstances were such that if they existed would justify the killing, he did not intend to kill without lawful justification and thus did not commit a criminal offense. *Lopez*, 166 Ill. 2d at 448. It followed, then, that " '[t]he requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill *without lawful justification*.' " (Emphasis added.) *Lopez*, 166 Ill. 2d at 446, quoting *People v. Reagan*, 99 Ill. 2d 238, 240 (1983). Consequently, we concluded in *Lopez* there could be no crime of attempted second degree murder because a defendant could not intend to kill without lawful justification and also intend the presence of a mitigating circumstance such as a sudden and intense passion due to serious provocation or the unreasonable belief in the need for the use of deadly force. *Lopez*, 166 Ill. 2d at 448-49.

Nonetheless, the majority finds that the statute here violates the proportionate penalties clause because a defendant charged with attempted first degree murder

will never have the opportunity to present mitigating evidence which would be a defense to a charge of second degree murder. 203 Ill. 2d at 491. The majority therefore concludes that persons whose actions are identical (except that one victim dies and one lives) may be exposed to vastly disparate sentences. 203 Ill. 2d at 492. I disagree. Based upon *Lopez*, a defendant charged with attempted first degree murder can raise the mitigating factors set forth in the second degree murder statute to negate a charge that he intended to unlawfully kill. Accordingly, a defendant charged with attempted first degree murder can claim either that he believed he was acting in self-defense, and thus intended to kill but not to kill unlawfully, or that he acted negligently or accidentally and thus did not intend to kill at all. The defendant can argue that, absent an intent to kill without lawful justification, he did not commit attempted first degree murder. Such a defendant would not be raising attempted second degree murder, but would simply be denying altogether that he committed attempted first degree murder. Consequently, I disagree with the majority's conclusion that "the enhanced penalties apply without regard to the defendant's ability to prove the existence of mitigating circumstances." 203 Ill. 2d at 489.

Because I believe the majority erred in comparing attempt to commit first degree murder with second degree murder for purposes of the proportionate penalties analysis, I dissent from the majority opinion. I would reverse the circuit court's judgment declaring the "15/20/25 to life" portion of the attempt statute unconstitutional.

JUSTICE KILBRIDE joins in this dissent.