THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND BARTGEN, Defendant-Appellant.

First District (1st Division)    No. 1—04—2095

Opinion filed September 26, 2005.

Patrick A. Tuite, Ronald D. Menaker, and Kevin R. Brenner, all of Arnstein & Lehr, L.L.P., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kathryn Schierl, Janet Powers Doyle, and C. Thor Martin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant Raymond Bartgen was convicted of two counts of attempted first degree murder and sentenced to six years in prison. Defendant argues on appeal: (1) his conviction must be vacated because the attempt statute was held unconstitutional by our supreme court; and (2) his conviction should be reversed because he was under the influence of prescription antidepressant medication and involuntarily intoxicated at the time he committed the offense. We affirm.

The evidence at defendant's trial showed defendant was a longtime employee of Sloan Valve Company (Sloan). Defendant developed a romantic infatuation with his coworker, Mary Jo Catalano. The feeling was not mutual and, in the spring of 2001, Catalano asked defendant to stop associating with her. Catalano was having an affair with the victim, also a Sloan employee, at the time.

Defendant's coworkers noticed defendant appeared depressed. On August 2, 2001, following the sudden death of defendant's close friend, the director of human resources at Sloan referred defendant to a psychiatrist. The psychiatrist prescribed defendant 20 milligrams per day of Paxil, an antidepressant prescription drug. On August 16, 2001, during a follow-up visit, the psychiatrist increased defendant's daily dosage of Paxil to 30 milligrams.

On August 28, 2001, at around 5:30 a.m., defendant was seen outside the victim's home dressed in army fatigues and an army hat pulled down low on his face. The victim saw defendant as he was leaving his house on his way to work. Defendant walked up to the victim and said he was going to kill him. Defendant then pulled a gun from his pocket and shot the victim several times. The victim ran down the street away from defendant. Defendant got into his car and drove after the victim. Defendant hit the victim with his car and then drove away. The victim's wife found the victim and drove him to the hospital. The victim was released from the hospital later that day.

The police arrived at Sloan to investigate the shooting shortly after 6 a.m. Defendant was in his office when the police arrived. Defendant took the police to see his car, which was damaged and spotted with fresh blood. Defendant told the police the car was in that condition when he got inside it that morning and that he planned to take the car in for repairs. Forensic testing confirmed that the blood found on defendant's car matched the victim's blood.

Defendant presented expert testimony that Paxil is a member of a class of drugs known as selective serotonin reuptake inhibitors (SSRI). SSRIs are associated with toxic side effects that include an increased tendency toward violence, aggression, homicide and suicide. These side effects can be triggered by ingesting an increased dosage of an SSRI drug. Defendant's experts believed defendant was experiencing toxic side effects of Paxil at the time he committed the crime.

The trial court found defendant guilty of two counts of attempted first degree murder. The court found the State, through its case in chief, adequately rebutted defendant's theory that he did not appreciate the criminality of his actions and was unable to conform his conduct to the law due to his ingestion of Paxil. Defendant was sentenced to two concurrent six-year terms in prison. He appeals.

Defendant first argues his convictions must be reversed because the attempt statute was held unconstitutional by our supreme court in *People v. Morgan*, 203 Ill. 2d 470, 786 N.E.2d 994 (2003), and *People v. Moss*, 206 Ill. 2d 503, 795 N.E.2d 208 (2003). The issue presents a question of law and is reviewed *de novo*. See *People v. Breedlove*, 213 Ill. 2d 509, 512, 821 N.E.2d 1176 (2004) (pure questions of law are reviewed *de novo*).

Our supreme court in *Morgan* held the attempt statute (720 ILCS 5/8—4 (West 2000)), as amended by Public Act 91—404 (Pub. Act 91—404, § 5, eff. January 1, 2000), violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Morgan*, 203 Ill. 2d at 472-73, 491-92. This holding was affirmed in *Moss*. *Moss*, 206 Ill. 2d at 518-19. The defendants in both cases brought

pretrial motions challenging the constitutionality of the attempt statute. *Moss*, 206 Ill. 2d at 506; *Morgan*, 203 Ill. 2d at 473-74. The trial courts granted the motions and dismissed as unconstitutional the charges of attempted first degree murder. *Moss*, 206 Ill. 2d at 506-07; *Morgan*, 203 Ill. 2d at 474. The supreme court affirmed the dismissals of those charges. *Moss*, 206 Ill. 2d at 518-19; *Morgan*, 203 Ill. 2d at 472-73.

Defendant here filed a pretrial motion to dismiss the attempted murder charges against him under *Moss* and *Morgan*. Defendant argued *Moss* and *Morgan* essentially eliminated the attempt offense. The trial court disagreed. The court held the effect of *Moss* and *Morgan* was to revert to the attempt statute as it existed before amendment by Public Act 91—404. Defendant's motion was denied and the State was allowed to proceed on the attempted first degree murder charges.

Defendant argues on appeal that the trial court erred in denying his motion and sentencing him in accordance with the attempt statute as it existed before the effective date of Public Act 91—404. Defendant relies on the fact the supreme court was silent about how the holding in *Moss* and *Morgan* would affect future prosecutions

■ It is well established under Illinois law that "[t]he effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment." *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281 (1990). Our supreme court in *Morgan* held "the attempt statute [citation], *as amended by Public Act 91—404*, is unconstitutional." (Emphasis added.) *Morgan*, 203 Ill. 2d at 491; see also *Moss*, 206 Ill. 2d at 518, quoting *Morgan*, 203 Ill. 2d at 492. The court made clear that only the amendment to the attempt statute was unconstitutional, and not the attempt statute in its entirety. The trial court was correct in applying the statute as it existed before the amendment and denying defendant's motion to dismiss the attempted first degree murder charges.

Defendant next argues he was not proven guilty beyond a reasonable doubt in light of evidence that he was rendered involuntarily intoxicated by his ingestion of Paxil. Defendant asks that we first decide whether the involuntary intoxication defense was available to him, and if so, whether the trial court's finding that defendant understood the criminality of his actions and could comport himself in accordance with the law was against the manifest weight of the evidence.

■ Section 6—3 of the Criminal Code of 1961 (720 ILCS 5/6—3 (West 2002)) codifies what is commonly known as the involuntary intoxication defense. That section reads:

"A person who is in an intoxicated or drugged condition is

criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6—3 (West 2002). This statute has been interpreted as encompassing intoxication produced through some external influence such as trickery, artifice or force. See *People v. Rogers*, 123 Ill. 2d 487, 508, 528 N.E.2d 667 (1988). More recently, in a case of first impression, another district of our appellate court held intoxication by an unexpected adverse reaction to prescribed medication is involuntarily produced intoxication within the meaning of section 6—3. *People v. Hari*, 355 Ill. App. 3d 449, 822 N.E.2d 889 (2005), *appeal allowed*, 214 Ill. 2d 541 (2005).

Whether a defendant's intoxication is so extreme as to render him incapable of committing a knowing or intentional act is an issue to be resolved by the trier of fact. *People v. Redmond*, 265 Ill. App. 3d 292, 302, 637 N.E.2d 526 (1994). The fact finder's judgment will not be reversed unless it is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Redmond*, 265 Ill. App. 3d at 302. In reviewing the judgment here, we note the fact finder is not required to accept a psychiatrist's conclusion with respect to the defendant's ability to appreciate the criminality of his actions and conform his conduct to the law. *Redmond*, 265 Ill. App. 3d at 302. We also note that our review requires that we look at the record in the light most favorable to the prosecution and assume the fact finder resolved all controverted facts and questions of testimonial credibility in favor of the State. *Redmond*, 265 Ill. App. 3d at 302.

■ Defendant presented evidence that he had been prescribed Paxil on August 2, 2001. On August 16, 2001, defendant's prescribed dosage was increased from 20 milligrams to 30 milligrams. There was also evidence that Paxil produces toxic side effects that include a tendency in patients taking an increased dosage of the drug to be aggressive, violent, suicidal and homicidal. The State, in its closing argument, pointed out that defendant did not present evidence showing he actually ingested Paxil during the time in question. The State also argued the intoxication defense was rebutted by evidence presented in its case in chief. The trial court ruled as follows:

"I have had an opportunity to review the evidence and judge the credibility and reliability of the witnesses who have testified. And after doing so, I find that the State has met [its] burden of proof.
\*\*\*
    \*\*\*
I \*\*\* find that the \*\*\* State \*\*\*, through [its] case, [has] rebutted any evidence of the Paxil disassociating [defendant] to the

point where he would not be able to appreciate the criminality of the offense and to conform his conduct to the law.

Having said that, I should indicate that I'm not sure that there is sufficient evidence of involuntary intoxication in the sense that, number one, the ingestion of the Paxil, if it was ingested, was certainly of [defendant's] own volition.

I find, further, that there is limited evidence for the [c]ourt to consider as to whether or not [defendant] was, in fact, taking Paxil at the time. Surely, there is evidence that it was prescribed. And I have no doubt about that. I accept that. However, there is limited evidence that he was actually taking the medication at the time the offense was committed."

The trial court's findings are not so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. See *Redmond*, 265 Ill. App. 3d at 302. The only evidence showing defendant ingested Paxil was through jail records—made after defendant's arrest—that he had been taking Paxil. Also, the reasonable inferences drawn from the State's evidence lead us to conclude that, even if defendant had ingested Paxil on or before the occurrence, he understood the criminality of his actions and could conform his conduct in accordance with the law. Defendant appeared to have planned the attack. He discovered the location of the victim's home and timed his arrival to coincide with the victim leaving for work. Defendant dressed so as to conceal his identity and later lied to police about the condition of his car after the attack. Also, after shooting the victim several times, defendant chased the victim down in his car in an apparent attempt to finish the job. The evidence, viewed in the light most favorable to the State, rebuts defendant's position that he was intoxicated, whether voluntarily or involuntarily, at the time of the occurrence.

So we need not decide in this case whether involuntary intoxication can legally result from voluntarily ingesting prescription medication. Even assuming such defense is available, the evidence here, as weighed by the trier of fact, is insufficient to show defendant was intoxicated within the meaning of section 6—3 when he committed the offense.

The judgment of the circuit court is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.