2025 IL App (1st) 231501-U

SECOND DIVISION
August 26, 2025

No. 1-23-1501

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 0193201 |
| | ) | |
| ROBERT STEELE, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Section 2-1401 petition was properly dismissed as untimely, as firearm enhancement for attempted murder did not render sentence void.

¶ 2    Petitioner Robert Steele appeals from the dismissal of his section 2-1401 petition. The only question before us is whether the 25-year firearm enhancement added to his sentence for an attempted murder committed in 2004 is void. It is not. His petition is thus untimely.

¶ 3                                   BACKGROUND

¶ 4    In 2000, our legislature enacted the now-familiar 15/20/25-to-life firearm enhancement scheme for attempted murder and other offenses. See Pub. Act 91-404 (eff. Jan. 1, 2000) (amending 720 ILCS 5/8-4(c)(1)(B)-(D)). In 2003, our supreme court held that the enhancements for attempted murder violated the Illinois Constitution. *People v. Morgan*, 203 Ill. 2d 470 (2003).

Specifically, the enhancements for attempted murder violated the proportionate penalties clause under the (now-defunct) test known as "cross-comparison analysis." *Id.* at 491-92.

¶ 5                                     I. Trial Proceedings

¶ 6     On January 25, 2005, the State charged petitioner with attempted murder, armed robbery, and aggravated battery with a firearm. (Other charges were dropped before trial.) These charges arose from a shooting about a month earlier on December 18, 2004.

¶ 7     Given the supreme court's holding in *Morgan*, the indictment did not charge a firearm enhancement for attempted murder. But it did charge a firearm enhancement for armed robbery, since the enhancement scheme for that offense had not (yet) been declared unconstitutional. The indictment thus specifically alleged that petitioner personally discharged a firearm, resulting in great bodily harm. The jury was accordingly instructed on that proposition for armed robbery but not for attempted murder. Petitioner was convicted of all three offenses.

¶ 8     Petitioner's case was pending in the trial court when *People v. Sharpe*, 216 Ill. 2d 481 (2005) was decided. The supreme court concluded that the cross-comparison analysis used in *Morgan* and other cases produced "obviously wrong" results and "should never have been a part of our proportionate penalties jurisprudence." *Id.* at 516-17. The supreme court thus eliminated cross-comparison analysis, leaving the identical-elements test and the shocks-the-conscience standard as the only grounds for a proportionate-penalties challenge. *Id.* at 517.

¶ 9     *Sharpe* overruled *Morgan* and two other cases that invalidated firearm enhancements based on a cross-comparison analysis. *Id.* at 519. "Thus, *Sharpe* effectively 'revived' the

constitutionality" of those enhancements, including the enhancements for "attempted murder while armed with a firearm." *People v. Hauschild*, 226 Ill. 2d 63, 76 (2007).

¶ 10    Petitioner was sentenced on May 7, 2007, long after *Sharpe* was decided. For the offenses of attempted murder and armed robbery, the trial court imposed cumulative 35-year sentences: in each case, a 10-year term plus a mandatory 25-year enhancement for a firearm discharge resulting in great bodily harm. Those sentences were to run concurrently. (The aggravated battery conviction merged into the attempted murder conviction.)

¶ 11    The trial court did not mention *Sharpe* by name but clearly invoked it as authority for imposing a firearm enhancement on the attempted murder conviction. (The enhancement for armed robbery, having never been declared unconstitutional and having been part of the indictment, required no justification.) As the trial court noted, the constitutionality of the firearm enhancements "has been up and down in the Illinois Supreme Court," which had most recently held that "[t]he basis for the first ruling that they considered [that is, *Morgan*] would not apply and that the test [that is, cross-comparison analysis] is not to be used by Illinois Courts." The trial court thus concluded:

> "So at this point under the current state of the law, both statutorily, as well as the opinions issued by the Illinois Supreme Court, as far as the charges of both attempt first degree murder and armed robbery, if someone has been found to personally discharge a firearm causing great bodily harm, as the jury was specifically instructed in the instructions relating to armed robbery, there has to be a 25-year sentence added ***."

¶ 12    One month after petitioner was sentenced, our supreme court decided *Hauschild*, 226 Ill. 2d 63. Among other holdings that will prove relevant, *Hasuchild* held that the enhancements for *armed robbery* were unconstitutional under the identical-elements test. *Id.* at 86-87. Petitioner did not challenge either firearm enhancement in the trial court.

¶ 13                    II. Direct Appeal and Initial Postconviction Proceeding

¶ 14    Petitioner did not challenge either firearm enhancement on direct appeal. See *People v. Steele*, No. 1-07-1924 (Dec. 31, 2008). Nor did he challenge either enhancement in his initial postconviction petition. See *People v. Steele*, No. 1-10-1148 (May 30, 2012).

¶ 15                    III. Section 2-1401 and Successive Postconviction Petitions

¶ 16    In April 2013, nearly six years after his sentencing, petitioner sought leave to file a successive postconviction petition and simultaneously filed his first section 2-1401 petition for relief from judgment. 735 ILCS 5/2-1401 (West 2022). The circuit court denied leave to file the former and dismissed the latter as untimely. The petitions were consolidated for our review in *People v. Steele*, 2016 IL App (1st) 133203-U ("*Steele III*").

¶ 17    In his successive postconviction petition, petitioner challenged his firearm enhancement for armed robbery. He argued the enhancement was "void," and thus subject to challenge at any time, because *Hauschild* invalidated the statute creating the enhancement as facially unconstitutional. Unlike *Morgan*, *Hasuchild* was never overruled, and the legislature cured the defect in the enhancement scheme by amending the statute. See *People v. Taylor*, 2015 IL 117267, ¶ 16. The State agreed, conceding that the enhancement for armed robbery was void. We agreed as well and vacated that enhancement. *Steele III*, 2016 IL App (1st) 133203-U, ¶ 14.

¶ 18    In his section 2-1401 petition, petitioner challenged his firearm enhancement for attempted murder. The petition was untimely, but petitioner sought to avoid this procedural bar by claiming that the enhancement for attempted murder, too, was void—not based on the now-overruled *Morgan* but because (as we mentioned above) the enhancement for attempted murder was not charged in the indictment or included in the jury instructions, as required under section 111-3(c-5) of the Code of Criminal Procedure. 735 ILCS 5/111-3(c-5) (West 2022) (codifying *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

¶ 19    We acknowledged that it was error—a possibly harmless *Apprendi* error—to impose the firearm enhancement for attempted murder. *Steele III*, 2016 IL App (1st) 133203-U, ¶ 30; see *People v. Thurow*, 203 Ill. 2d 352, 369 (2003) (*Apprendi* errors may be harmless when evidence of enhanced element is uncontested and overwhelming). But this error, we noted, would render the enhancement merely "voidable," not "void." *Steele III*, 2016 IL App (1st) 133203-U, ¶ 31. In other words, the judgment being challenged was the result of ordinary trial-court error—the kind subject to the "ordinary procedural bars," such as timeliness, that apply to section 2-1401 petitions. See *People v. Thompson*, 2015 IL 118151, ¶ 31. Thus, the petition was properly dismissed as untimely. *Steele III*, 2016 IL App (1st) 133203-U, ¶ 31.

¶ 20                         IV. Section 2-1401 Petition Under Review

¶ 21    Having removed the firearm enhancement for armed robbery in *Steele III* but with his enhancement for attempted murder still intact, petitioner filed another section 2-1401 petition in January 2023, the one currently before us. This time, he alleged that the firearm enhancement for attempted murder was void under *Morgan*. The State argued below that the petition was

untimely and barred by the *res judicata* effect of *Steele III*, and that *Morgan* has "no legal standing" after it was "vacated" by *Sharpe*. The circuit court dismissed the petition, finding it "frivolous and patently without merit." Petitioner appeals from that judgment.

¶ 22                                     ANALYSIS

¶ 23    Petitioner argues that his firearm enhancement for attempted murder was imposed "pursuant to a statute that was void *ab initio* at the time of [his] offense." Thus, he says, his enhanced sentence is a void judgment, subject to challenge in an otherwise untimely section 2-1401 petition. Petitioner asks us to vacate the enhancement portion of his sentence (as we did in *Steele III*, for his armed-robbery sentence), or in the alternative, to remand for resentencing under the attempted murder statute as it existed before the firearm enhancements were enacted.

¶ 24    Section 2-1401 petitions usually must "be filed not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2-1401(c) (West 2022). This limitations period does not apply to a petition that challenges a void judgment. *Thompson*, 2015 IL 118151, ¶ 29. A judgment is void only if it was (1) entered by a court that lacked jurisdiction or (2) based on a statute that is facially unconstitutional and thus void *ab initio*. *People v. Price*, 2016 IL 118613, ¶ 31.

¶ 25    Whether a judgment is void, and whether the dismissal of a section 2-1401 petition on legal grounds was proper, are both questions of law we review *de novo*. *Hauschild*, 226 Ill. 2d at 72; *Thompson*, 2015 IL 118151, ¶ 25.

¶ 26    Petitioner's void-enhancement claim is based on the premise that *Morgan* was the law at the time of his offense. True, *Morgan* held that the firearm-enhancement scheme for attempted murder was facially unconstitutional under the proportionate penalties clause, and that amounts

to a declaration that the law was void *ab initio*. *Morgan*, 203 Ill. 2d at 491-92; *Taylor*, 2015 IL 117267, ¶ 15. But the supreme court reversed course in *Sharpe*, 216 Ill. 2d at 516-17, where it overruled *Morgan* and eliminated cross-comparison analysis as a framework for proportionality review. See also *Hauschild*, 226 Ill. 2d at 76 ("*Sharpe* effectively 'revived' enhancements for attempted murder"); *People v. Washington*, 2012 IL 107993, ¶ 8 ("With our decision in *Sharpe*, the enhanced sentencing provisions that were originally in the amended versions of the statutes came back into effect.").

¶ 27    *Sharpe*'s upshot is clear: *Morgan*'s cross-comparison analysis "should never have been a part of our proportionate penalties jurisprudence," and the enhanced penalties erroneously invalidated under that framework are, and always have been, constitutional. *Sharpe*, 216 Ill. 2d at 517. Thus, as we have said before, "the firearm enhancement factor for attempted murder was not unconstitutional prior to *Sharpe*; it was erroneously held to be unconstitutional." *People v. Abdullah*, 2018 IL App (2d) 150840, ¶ 20, *reversed on other grounds*, *People v. Abdullah*, 2019 IL 123492 (holding sentence was void due to different, jurisdictional defect). Or, in the terms of petitioner's argument, the enhancement was not "void *ab initio* at the time of [his] offense;" it was *erroneously held*, at that time, to be void *ab initio*.

¶ 28    Petitioner has cited no decision for the proposition that, instead of relying on *Sharpe* to determine whether the enhancement was void, we should rely on the decision it overruled, *Morgan*. And we can think of no reason why we would do so. Indeed, imagine this analogy with only slightly different facts: an *appellate* court invalidated the enhancement, and thus it remained void at the time petitioner committed his crimes and was charged, but the supreme court then

reversed that appellate decision on further appeal. Would we apply the appellate or the supreme court decision in determining the validity of that enhancement? The answer is obvious. The only difference here is that it was the supreme court overruling one of its own prior decisions.

¶ 29    In any event, because the *Sharpe* decision was handed down during petitioner's trial proceedings and years before petitioner was sentenced, *Sharpe* obviously applied to his case. See *Hauschild*, 226 Ill. 2d at 77-79 (*Sharpe* applied retroactively to defendant's case, as "new judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to those cases pending on direct review at the time the new rule is announced").

¶ 30    That leaves petitioner with only one argument: that the retroactive application of *Sharpe* violated his due-process rights by increasing his sentencing exposure without notice. That is a colorable claim in theory. In *Rogers v. Tennessee*, 532 U.S. 451, 456-58 (2001), the United States Supreme Court held that the retroactive application of a judicial decision to pending cases may violate due process if it has the effect of increasing a defendant's criminal liability or sentencing exposure without notice and fair warning. See also *Bouie v. City of Columbia*, 378 U.S. 347, 355 (1964) (retroactive application of state supreme court's decision, which significantly broadened scope of criminal-trespass law, violated due process rights of defendants with pending cases who had no fair notice that statute would be so interpreted).

¶ 31    But we need not decide whether petitioner's due-process rights were violated for one simple reason: even if he were correct, he would only establish a violation of due process as applied to his case. That is, he would only establish that his sentence was *voidable*, not void *ab initio*, and thus he cannot overcome the two-year limitations period for filing a section 2-1401

claim. See *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927, ¶ 23; *Thompson*, 2015 IL 118151, ¶ 31.

¶ 32     Look no further than our decision in *Steele III*. Recall that petitioner's argument there was that it was error to apply the enhancement for attempted murder because it was not included in his indictment or jury instructions, what we often call an *Apprendi* error but styled there as the violation of a statute that codified *Apprendi*. See *Steele III*, 2016 IL App (1st) 133203-U, ¶ 30; 735 ILCS 5/111-3(c-5) (West 2022). That was a due-process argument, too. See *Apprendi*, 530 U.S. at 484 (*Apprendi* rule is grounded in "due process and associated jury protections"). The sentence was thus potentially voidable as a due-process violation but not void. *Steele III*, 2016 IL App (1st) 133203-U, ¶ 31. And because petitioner was not alleging a void judgment, he could not overcome the two-year time bar in section 2-1401; his petition was untimely. *Id.*

¶ 33     We reach the same conclusion here. At best, petitioner here can establish only a voidable judgment, not a void one. So he cannot avoid the two-year limitation on filing section 2-1401 petitions. His petition was thus untimely. See, *e.g.*, *People ex rel. Alvarez*, 2022 IL 126927, ¶ 23 (forfeiture order entered allegedly without proper notice rendered order, at most, voidable, not void, and thus section 2-1401 petition filed more than two years after entry of order was untimely); 735 ILCS 5/2-1401(c) (West 2022). The petition was properly dismissed.

¶ 34                                        CONCLUSION

¶ 35     The judgment of the circuit court is affirmed.

¶ 36     Affirmed.