FIFTH DIVISION

MARCH 31, 2004

No. 1-02-3733 

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No.  01 CR 16022(02)

)

YOHN ZAPATA, a/k/a Yohn Zapada, ) Honorable

) Colleen McSweeney-Moore,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the trial court found defendant Yohn Zapata guilty of the first degree murder of Omar Brown and sentenced him to 50 years in prison.  Defendant now appeals his conviction and sentence.  Codefendant Alex Negron was tried simultaneously before a jury and is not a party to this appeal.
(footnote: 1)
 The record on appeal discloses the following facts.  On the evening of June 17, 2001, Omar Brown drove his cousin, Conan Little, and his friend, Raphael Vega, to a Father's Day barbeque in Cicero.  Brown and Vega left the barbeque at approximately 11:15 p.m. to return to Brown's home at 2924 W. Shakespeare; Little, his father, and his father's friend followed in a separate car.  Brown stopped his car in an unlit alley next to his apartment building.  Brown, who intended to spend the night at Vega's home, went inside with Little to get clothes, while Little's father and Vega remained by Brown's car.  When Brown and Little returned, Brown got into the driver's seat of his car, while Little and Vega got into the rear of the car.  

Brown began to pull forward to allow Little's father to get into the front passenger seat, when Brown exchanged words with defendant, who was walking through the alley.  Little and Vega testified that a man they knew by the name "Coli" began banging on the hood of Brown's car.  Little and Vega later identified defendant as "Coli" in a lineup.  Vega also identified him from photographs.  Little identified defendant as "Coli" in court, but Vega could not.

Defendant testified that he banged on the hood of Brown's car after hearing Little say "fuck you" to him and Brown tried to strike him with the car.  Defendant testified that when he banged on the hood of Brown's car, a van had entered the alley and stopped behind Brown's car.  Defendant testified that "Danny and Alex were in the van."  Defendant testified that he said, "[N]ow there's [four] of you and I got two friends here, too."

Little and Vega testified that defendant punched out the driver's side window of Brown's car.  Defendant testified that Brown tried to open his car door so as to strike defendant, and that the window broke as defendant and Brown struggled against each other for control of the door.  Defendant testified that Brown grabbed his hands and caused the car door to cut defendant on the face and hands.  Defendant testified that he broke free of Brown's grasp, whereupon Brown got out of his car and began fighting with defendant.  According to defendant, Brown, who was bigger than defendant, grabbed defendant by the neck so hard he could barely breathe.  Defendant testified that Vega started hitting him, but defendant was separated from Brown when Vega pushed defendant to the ground.

Little testified that he was pulled from the car and saw defendant hit Brown.  Little testified that he was beaten by five or six people, one of whom had him in a headlock against the car.  Vega testified that he saw Little being beaten.  According to Vega, "Danny" tried to pull Vega out of the car, but he grabbed and pushed Danny instead.  Vega testified that he got out of the car and pushed defendant off of Brown.  Defendant fell to the ground.

Defendant testified that Danny came up to him to help him up from the ground.  Defendant testified that he saw Brown coming at him, was scared, took a gun from Danny's hand and fired two shots at Brown.  Defendant testified that he intended to scare Brown, not kill him.  Defendant testified that he did not know whether he had hit Brown.  Defendant stated that he handed the gun back to Danny and ran to a friend's house.

Vega testified that after defendant fell, defendant stood, pulled a gun from his pants and shot twice in the direction of Brown's face.  Little testified that he saw defendant shoot Brown twice in the stomach and in the armpit area.  Little and Vega testified that Vega attempted to help Brown into the apartment building, but Brown had to sit and fell backward.  Little and Vega testified that they saw defendant hand the gun to codefendant Alex Negron, a/k/a "Heavy," who then shot Brown two or three more times.  

Little testified that everyone began running.  Vega testified that Negron chased him up the stairs of the building.  Vega admitted that he originally told the police that defendant had shot Brown on the ground and chased Vega into the building.  Vega stated that he did not know their names at the time of the shooting and was not given an opportunity to correct his statement to the police.  The parties stipulated that an assistant State's Attorney would testify that Vega signed a statement that defendant chased him into the building and fired at him approximately three times.

Dr. Adrienne Segovia, a deputy medical examiner with the Cook County medical examiner's office, testified that Brown died of multiple gunshot wounds, including a shot to the back of the head, another to the head, one to the chest and one to the left side of his back.  Dr. Segovia testified that, in a multiple-gunshot-wound case, the Cook County medical examiner's office does not separate the shots to determine which was fatal, but assigns the wounds equal weight.  Dr. Segovia testified that three bullets recovered from Brown's body were photographed and turned over to the Chicago police department.

Chicago police Detective Tracy Fanning testified that, shortly after midnight on June 18, 2001, she was assigned to investigate the shooting.  Detectives Derrick Johnson and Arthur Young were also present at the crime scene.  Detective Fanning testified that after conducting witness interviews and receiving a photograph of defendant brought to the scene by other police officers, she began searching for defendant.

Detective Fanning testified that she first went to an address on California Street, then to a two-flat on the 2900 block of 21st Street.  After receiving information, Detective Fanning went up to the second floor, where she saw defendant through an open door.  Detective Fanning identified defendant in court.

Detective Young testified that codefendant was found at the Stars Motel at 6100 North Lincoln between 4 and 5 a.m. on June 18, 2001.  The police recovered a gun and five shell casings from the motel room.  The parties stipulated that forensic scientist John Flanskamp would testify that the bullets recovered from the postmortem examination of Brown and the shell casings recovered at the Stars Motel were all fired from the gun recovered at the Stars Motel.

Defendant testified to his account of the shooting.  Defendant testified that he had refused to answer the police questioning.  Defendant denied telling Detective Fanning that, on the night in question, he had gone with his girlfriend and their daughter to Hollywood Beach to celebrate their daughter's birthday, returning to the girlfriend's home at 2648 West 21st Street at 11 p.m., where they remained for the rest of the night.  Defendant testified that he did go to the beach with them and left at approximately 11 p.m., but his girlfriend left him a few blocks from his house when she stopped to get gasoline at Fullerton and California.  

In rebuttal, Detective Fanning testified that defendant had told the police that he had spent the night at his girlfriend's home on 21st Street.  Detective Fanning testified that she then went to 21st Street to speak with defendant's girlfriend, who was ultimately brought to the police station to continue the investigation.  Detective Fanning acknowledged that the arrest report in this case stated that defendant refused statements, oral and written.  Detective Fanning testified that the note in the arrest report meant that defendant refused to make a statement to a State's Attorney.

Following closing argument, the trial court found defendant guilty of the first degree murder.  The trial court later denied defendant's posttrial motion.  The trial court sentenced defendant to 50 years in prison, 20 of which were imposed under a statute adding that term where the person personally discharged a firearm.  Defendant now appeals.

I

Defendant initially contends that 
the State failed to disprove beyond a reasonable doubt his claim of self-defense.  Self-defense is an affirmative defense and, once raised, the State has the burden of proving beyond a reasonable doubt that defendant did not act in self-defense.  
People v. Jeffries
, 164 Ill. 2d 104, 127, 646 N.E.2d 587, 597 (1995).  The elements of self-defense are that:  (1) unlawful force was threatened against a person; (2) the person threatened was not the aggressor; (3) the danger of harm was imminent; and (4) the use of force was necessary.  
People v. Dillard
, 319 Ill. App. 3d 102, 106, 745 N.E.2d 185, 188 (2001).  The standard of review is whether, taking all of the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that defendant was not acting in self-defense.  
Dillard
, 319 Ill. App. 3d at 106-07, 745 N.E.2d at 189.

However, defendant's attack focuses on the trial court's determination of the credibility of the witnesses.  Defendant notes that the trial court found that defendant was not a credible witness.  
In a bench trial, it is the province of the trial court to determine the credibility and weight of the testimony, to resolve the inconsistencies and conflicts therein and to render its decision accordingly.  
People v. Berland
, 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, 658 (1978).  Defendant nevertheless contends that the trial court's determination of credibility was based on unreasonable inferences from the record, ignoring evidence that corroborated his testimony. 

Defendant specifically takes issue with the trial court's inference that he must have made a statement to Detective Fanning, contending that there were "other, equally plausible explanations" as to how Detective Fanning could have learned whether defendant spent the day with his girlfriend.  However, where more than one equally plausible interpretation can be made from the facts, the credibility determination of the trial court will be sustained.
  
People v. Chapman
, 22 Ill. 2d 521, 525
, 177 N.E.2d 143, 145 (1961); 
Mache v. Mache
, 218 Ill. App. 3d 1069, 1075
, 578 N.E.2d 1253, 1257 (1991)
.
  
This court will not overturn the trier of fact on questions involving the weight or credibility of testimony unless the evidence is "so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of [the defendant's] guilt."  
People v. Abdullah
, 220 Ill. App. 3d 687, 693, 581 N.E.2d 67, 72 (1991).

In this case, Detective Fanning first went to an address on California Street, then to a two-flat on the 2900 block of 21st Street, where she found defendant.  Detective Fanning testified that she 
returned
 to the girlfriend's home 
after
 speaking to defendant.  The logical inference to be drawn is that Detective Fanning was seeking evidence she did not obtain earlier at either address, in response to the police questioning of defendant.  Defendant claims that Detective Fanning might have gotten information from codefendant or others, but this claim is speculation without testimonial support in the record.  Moreover, the transcript shows that this issue was not the only one the trial court considered in assessing the credibility of the witnesses.

Defendant notes that the arrest report stated that defendant refused to give a statement, but Detective Fanning testified that this meant that defendant refused to make a statement to a State's Attorney.  Defendant attack's Vega's credibility based on his prior signed statement that had the roles of the codefendant and defendant reversed, but Vega testified that he did not know their names when he gave that statement and was not given an opportunity to correct it.

In short, while there were conflicts in the evidence, defendant has failed to show that 
the evidence was so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of his guilt.
  Thus, there is no reason to overturn the trial court's determinations of witness credibility.

Defendant claims that the State failed to prove beyond a reasonable doubt that defendant was accountable for codefendant Negron's acts.  Defendant and codefendant were jointly indicted.  Defendant points to nothing in the record suggesting he was convicted on the theory of accountability.  Moreover, 
the justifiable-use-of-force defenses presuppose that, when a defendant invokes them,
 the accused committed the act.  
People v. Diaz
, 101 Ill. App. 3d 903, 915
, 428 N.E.2d 953, 962 (1981)
.  Defendant cannot simultaneously assert that he did not commit the offense and that he was justified in committing it.

Defendant argues in the alternative that he should have been found guilty of second degree murder. However, the transcript shows that the trial court 
completely
 rejected the notion that this was a case of self-defense, finding that defendant was the aggressor, which negates the possibility of reasonable and unreasonable self-defense.  See 
People v. Morgan
, 187 Ill. 2d 500, 535
, 719 N.E.2d 681, 701 (1999).

In sum, defendant has failed to show that the trial court erred in finding defendant guilty of first degree murder.

II

Defendant contends that he was denied a fair sentencing hearing where the trial judge improperly relied on her own personal disdain for gang violence, where there was no evidence that the murder was related to gang activity.  The State responds that defendant waived the issue by failing to raise it in the trial court.  However, the State also notes that 
the waiver rule is less rigidly applied when the basis for the objection is the trial judge's conduct.  
People v. Nevitt
, 135 Ill. 2d 423, 455, 553 N.E.2d 368, 381 (1990)
; 
People v. Brown
, 200 Ill. App. 3d 566, 575, 558 N.E.2d 309, 314 (1990)
.
  The  waiver rule
 is relaxed when the conduct of the judge is at issue due to "'the fundamental importance of a fair trial and the practical difficulties involved in objecting to the conduct of the trial judge.'"  
Brown
, 200 Ill. App. 3d at 575, 558 N.E.2d at 314, quoting 
People v. Heidorn
, 114 Ill. App. 3d 933, 936, 449 N.E.2d 568, 572  (1983)
.  Thus, this court turns to address the merits of the issue.

Where the sentencing judge relies on improper factors, including prejudice or speculation,  the sentence should be vacated and the cause remanded for resentencing.  
People v. Dempsey
, 242 Ill. App. 3d 568, 597
, 610 N.E.2d 208, 227 (1993)
.
  It is improper for a trial court to consider that a shooting was gang related where there is no evidence that the shooting was gang related.
  
People v. Carter
, 344 Ill. App. 3d 663, ___ N.E.2d ___ (2003)
; 
People v. Gonzalez
, 238 Ill. App. 3d 303, 333
, 606 N.E.2d 304, 325 (1992)
; 
People v. Rosa
, 206 Ill. App. 3d 1074, 1084-85, 565 N.E.2d 221, 228 (1990)
.  For example, in 
Gonzalez
,
 the 
sentencing court stated: 

"'THE COURT:  The Court has considered the presentence report and the statement of counsel and the evidence heard on the trial of this case.  It was the victim here who knew that this defendant was the person perhaps among others who shot, and shot him repeatedly.

And this was typically a Chicago street gang murderous assault.  It was typically mindless, stupid, cowardly, callous, and for no other reason but this mindless street gang conflict which is-- there has been nothing more stupid or cowardly ever conceived of than this continuous street gang rivalry in this city.  But there is nothing, it was a cold blooded shooting and murder.

There is no mitigation of any kind, none conceivable.  And the law in its provisions, sentencing provisions is more than generous in setting the maximum term of 40 years and then allow­ing for half of that time to become good time.  Many believe it to be inadequate, but the Court can see no reason to impose any other sentence.'"  
Gonzalez
, 238 Ill. App. 3d at 333
, 606 N.E.2d at 325
.

The 
Gonzalez
 court 
vacated
 the sentence and remanded to the trial court for resentencing
, holding that 
the trial court failed to consider the requisite statutory factors.  See 
Rosa
, 206 Ill. App. 3d at 1084-85, 565 N.E.2d at 228 (connected case involving even more egregious comments); 
People v. Smith
, 178 Ill. App. 3d 976, 985, 533 N.E.2d 1169, 1175 (1989) (sentencing judge believed the offense was gang related, without any evidence that defendant had gang-related motives).  
See also 
People v. Johnson
, 227 Ill. App. 3d 800, 817,
 592 N.E.2d 345, 357 (1992) 
(
sentencing court considered crime to be drug related without evidence of such in the record).

In this case, the trial judge stated the following in sentencing defendant:

"THE COURT:  Based on the matters before me, the factors I have heard in aggravation and mitigation, the pre-sentence investigation report, the victim impact statement, and the testimony of defendant's mother, as I indicated in Mr. Negron's sentencing, the fact that gang members wield guns and shoot them willy-nilly for no apparent purpose is just so senseless.  Both families sit here today losing a relative."

As the trial judge referred to her comments in sentencing codefendant Negron, it is noted that she made the following comments in sentencing Negron, who had argued in part that his lack of a father and poverty were mitigating factors in his case:

"THE COURT:  Okay.  Based on the matters before me, the factors I heard and considered in aggravation and mitigation, the pre-sentence investigation report, as well as the victim impact statement from Mr. Brown's mother in this case, the senseless nature of this case just really typifies the senselessness of gang violence in this city.  We have family members of the victim and the defendant on both sides all losing sons, relatives and for what?

***

There are many people in the city who don't have fathers and live in poverty and that is not an excuse for gang activity and murder."

The State admits in its brief that "[e]vidence of defendant's gang involvement was never introduced at trial," but maintains that the comments were proper because the presentence report contains the statement that Zapata became a member of the Latin Lovers street gang at age 19, that his nickname was "Columbia," and that he quit the gang in 1999.  The State fails to explain how defendant's past gang membership is evidence that 
this
 murder was gang related.

The State claims this case is similar to 
People v. Dizon
, 297 Ill. App. 3d 880, 891
, 697 N.E.2d 780, 787 (1998), where 
the sentencing judge noted that the case "clearly demonstrated that it was another illustration of senseless gang violence."  In 
Dizon
, the State introduced evidence that:

"
Immediately prior to the fight, however, defendant, a member of a Filipino street gang, yelled 'RSG' and 'Dragon Killer' at the victim.  These were references to a Korean gang.  Thus, the evidence of gang affiliation was relevant to explain the motive for the murder, which was gang rivalry. The additional evidence regarding the cigarette burn marks on the hands of the defense witnesses was also relevant in that it illustrated the common bond between the witnesses and the defendant, who were all members of the Filipino street gang 'Red Scorpions,' and was relevant to show the defense witnesses' motive to testify as they did."  
Dizon
, 297 Ill. App. 3d at 889-890
, 697 N.E.2d at 787.

The State also compares this case to 
People v. Banks
, 260 Ill. App. 3d 464, 
632 N.E.2d 257 (1994)
.  
Banks
 suggests that the sentencing court may consider a defendant's gang membership 
when considering his general moral character, his mentality, his habits, his social environments, his abnormal tendencies, his age, his natural inclination or aversion to commit crime and the stimuli which motivated his conduct.  See 
Banks
, 260 Ill. App. 3d at 474
, 632 N.E.2d at 265
.
 
 However, the presentencing report in 
Banks
 showed that the defendant was a 
current
 gang member; the report here stated that defendant had quit a gang in 1999.  In both 
Banks
 and 
Dizon,
 the record contained evidence of gang rivalry; there is none here.  Furthermore, in 
Banks
, this court examined the transcript and concluded that "
the tone of the court's comments do[es] not suggest that the rival gang situation was used in aggravation at all but instead indicates a criticism of the State's witnesses and a proposed rationale for the actions of defendant."  
Banks
, 260 Ill. App. 3d at 474
, 632 N.E.2d at 265
.

In this case, the State admits that there was no evidence introduced at trial that this murder was gang related.  
A reviewing court should not focus on a few words or statements of the trial court, but should make its decision based on the entire record.
  
People v. Fetter
, 227 Ill. App. 3d 1003, 1010, 591 N.E.2d 474, 478 (1992).  In this case, the transcript shows that the trial judge's distaste for gang violence was the dominant factor in the determination of defendant's sentence.  A distaste or disgust for gang violence is entirely understandable, but it is an improper sentencing factor where there is no evidence that the murder was gang-related.

In sum, the trial court erred.  Defendant's sentence shall be vacated and the case will be remanded for resentencing.  Accordingly, this court need not consider defendant's other claim that the 30-year base sentence was excessive.

III

Finally, defendant contends that the statute mandating the addition of 20 years to his sentence, section 5--8--1(a)(1)(d)(ii) of the Uniform Code of Corrections (730 ILCS 5/5--8--1(a)(1)(d)(ii) (West 2000)), is unconstitutional.
  A statute is presumed constitutional; the party challenging the statute bears the burden of demonstrating its invalidity.  
People v. Moss
,
 206 Ill. 2d 503, 519-20, 795 N.E.2d 208, 219 (2003).
  This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done.  
Moss
,
 206 Ill. 2d at 520, 795 N.E.2d at 219
.  The question of whether a statute is constitutional is subject to 
de novo
 review.  
Moss
,
 206 Ill. 2d at 520, 795 N.E.2d at 219.

Public Act 91404 (Pub. Act 91--404, eff. January 1, 2000) amended the penalty portion of various criminal offenses, including first degree murder, which the legislature deemed "the most serious offenses," by adding what has been referred to as the "15/20/25 to life" mandatory sentence enhancement provisions when the designated offenses involve the use of a firearm.  See 
Moss
,
 206 Ill. 2d at 514, 795 N.E.2d at 215-16, quoting 91 Ill. Gen. Assem., House Proceeding, May 13, 1999, at 67-68 (statements of Representative Turner).  The relevant provision provides that:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

 (1) for first degree murder

(a) a term shall not be less than 20 years and not more than 60 years, or

* * *

(d)(i) if the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court;

(ii) if, during the commission of the offense, the person personally discharged a firearm, 20 years shall be added to the term of imprisonment imposed by the court;

(iii) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigure­ment, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."  730 ILCS 5/5-8-1(a) (1) (d) (i), (a) (1) (d) (ii), (a) (1) (d) (iii) (West 2000).

Defendant argues that the statute violates the proportionate penalties clause of the Illinois Constitution and due process of law.  This court addresses each argument in turn.

The proportionate penalties clause of the Illinois Constitution provides that "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const. 1970, art. I, §  11.
  Our courts have addressed the constitutionality of amendments added by Public Act 91--404 with respect to other offenses on proportionate penalty grounds.  In 
People v. Hill
, 199 Ill. 2d 440, 451, 771 N.E.2d 374, 381 (2002)
, the court concluded that the 15-year enhancement for committing home invasion while armed with a firearm did not violate the proportionate penalties clause of the Illinois Constitution.
  In 
People v. Walden
,
 199 Ill. 2d 392, 396-97, 769 N.E.2d 928, 931-32 (2002), the court concluded that the 15-year enhancement for committing armed robbery while in possession of a firearm violated the proportionate penalties clause.  See also 
People v. Garcia
, 199 Ill. 2d 401, 770 N.E.2d 208 (2002) (same).  In 
People v. Morgan
, 203 Ill. 2d 470, 491-92, 786 N.E.2d 994, 1007 (2003), the court concluded that the 15/20/25-to-life enhancement of the attempt statute violated the proportionate penalties clause in the case of attempted first degree murder.  

In 
Moss
, the court concluded that enhancements for committing armed robbery with the personal discharge of a firearm, aggravated vehicular hijacking while in possession of a firearm, and aggravated vehicular hijacking with the personal discharge of a firearm violated the proportionate penalties clause.  
Moss
,
 206 Ill. 2d at 531, 795 N.E.2d at 225.  Regarding the enhancement for committing armed robbery with the personal discharge of a firearm, the trial court in 
Moss
 had explicitly found "no disproportionality in the case of the 25-years-to-life enhancement for causing great bodily harm *** or death."  
Moss
,
 206 Ill. 2d at 532, 795 N.E.2d at 226.  The 
Moss
 court concluded that the defendants had presented no argument sufficient to dissuade it from deviating from the trial court's finding.  
Moss
,
 206 Ill. 2d at 532, 795 N.E.2d at 226. 
 In 
People v. Sawczenko-Dub
, 1-02-2156 (December 16, 2003), this court concluded that the similar 25-year firearm enhancement provision for murder does not violate the proportionate penalties clause of the Illinois Constitution.  See also 
People v. Moore
, 343 Ill. App. 3d 331, 
797 N.E.2d 217 (2003)(same).

There are three separate tests to identify a proportionate penalties violation:

"First, a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.  Second, a penalty is invalid under the proportionate penalties clause where similar offenses are compared, and conduct that creates a less serious threat to the public health and safety is punished more severely.  Third, there is a violation of the proportionate penalties clause when identical offenses are given different sentences."  
Hill
, 199 Ill. 2d at 452, 771 N.E.2d at 381.

Defendant contends that the 20-year enhancement for committing murder along with the personal discharge of a firearm is unconstitutional on the ground that the penalty for murder while personally discharging a firearm is disproportionate to the penalty for murder by other means.

In 
Hill
, our supreme court engaged in a similar "same-statute inquiry" where the defendant argued that different versions of the home invasion statute violated the proportionate penalties clause.  See 720 ILCS 5/12--11(a)(1) through (a)(5) (West 2000).  
The cross-comparison analysis involves two steps.  First, the court considers whether the purposes of the compared statutes are distinct such that comparative proportionality review is not appropriate.
  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 382-83.
  Second, 
if the purposes are related
, we consider whether the offense with the harsher penalty is more serious than the offense with the less severe penalty.
  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 382-83.
  
It is inappropriate to compare offenses and their penalties unless they have common statutory purposes. When offenses have different purposes, our courts presume that the legislature considered different factors in establishing the penalties for them and defer to its judgment.  
People v. Lombardi
, 184 Ill. 2d 462, 476
, 705 N.E.2d 91, 99 (1998).

For example, in 
Hill
, the defendant committed home invasion while armed with a firearm under 12--11(a)(3) of the Criminal Code of 1961.  See 720 ILCS 5/12--11(a)(3) (West 2000).  Section 12--11(a)(1) (home invasion while armed with a dangerous weapon other than a firearm) and section 12--11(a)(2) (home invasion that causes an injury) mandate a Class X felony sentence of 6 to 30 years' imprisonment when force is used or injury occurs.  In enacting Public Act 91--404, the legislature added sections 12-11(a)(3) through (a)(5) to incorporate the "15/20/25-to- life" sentencing enhancements for home invasions involving firearms.  See 
Hill
, 199 Ill. 2d at 453, 771 N.E.2d at 382.

Our supreme court held that the penalties prescribed by the five subsections of section 12-11(a) are not disproportionate.  The court concluded that by amending the home invasion statute, the legislature "essentially intended to break the offense of home invasion into two distinct categories:  offenses committed without a firearm and offenses committed with a firearm."  
Hill
, 199 Ill. 2d at 457, 771 N.E.2d at 384.  The supreme court stated that, "[w]hile one might properly conclude that the general purpose of the statute as a whole has not changed, we nevertheless find that the new firearms provisions serve a second, more specific purpose and target a unique type of danger."  
Hill
, 199 Ill. 2d at 458, 771 N.E.2d at 385.  Thus, the supreme court concluded that proportionality review was inappropriate.  
Hill
, 199 Ill. 2d at 458-59, 771 N.E.2d at 385.

In 
Moore
, this court concluded that:

"The rationale of 
Hill
 supports a similar conclusion here because Public Act 91-404 added the 15/20/25-to-life sentencing scheme to both home invasion and first-degree murder.  By amending the sentencing statute for first-degree murder pursuant to Public Act 91-404, the legislature intended to create two categories of first-degree murder:  those committed without a firearm and those committed with a firearm. *** Comparative proportionality review is inappropriate here because the new firearms provisions of the first-degree murder sentencing statute serve a second, more specific purpose and target a unique type of danger that is absent when the offender does not possess a firearm. [Citation] Given the pervasive and enhanced danger from an offender's possession of a firearm, the legislature's superior position in identifying and addressing the evils of gun-related violence, and the presumptive constitutionality of a legislative enactment, we conclude that defendant has not met his burden of proving that section 5--8--1(a)(1), (d)(iii) violates the proportionate penalties clause of the Illinois Constitution."  
Moore
, 343 Ill. App. 3d at 346, 
797 N.E.2d 
at 230.

This court elaborated on the difference in legislative purpose in 
Sawczenko-Dub
:

"Assuming,  
arguendo
, that defendant had not waived this issue, we would nonetheless conclude that a cross-comparison proportionality review is not appropriate here because the statutory purpose of the Public Act 91--404 enhancements and the statutory purpose behind prevention of brutal and heinous murders (the crime relied upon by defendant as the second basis of her argument) are not the same.  The purpose of Public Act 91--404 is 'to deter the use of firearms' in the commission of certain felonies.  While the legislature has not defined a purpose with respect to brutal and heinous murders, nor has our independent research located any authority stating the legislative purpose, the purpose certainly and clearly was not to deter the use of firearms in the commission of murder.  A quick perusal of the annotated statute of section 5--8--1 clearly shows that brutal and heinous conduct is as often committed by other means,  
i.e.
, beating, stabbing, 
etc
., as it is committed with a firearm.  Because the statutory purposes of the provisions are not the same, a comparative review therefore is not appropriate.  Accord­ingly, we reject defendant's contention that the 25-year firearm enhancement provision violates the proportionate penalties clause of the Illinois Constitution."  
Sawczenko-Dub
, slip op. at 25-26.

Defendant argues that the danger inherent in the possession of a firearm--that someone will be killed in the course of the crime--is already encompassed by the murder statute.  Defendant cites the statement in 
Morgan
 that "[t]
he presence of firearms during the commission of an offense always poses an extreme danger, not only to intended victims, but also to innocent bystanders."  
Morgan
, 203 Ill. 2d at 488, 786 N.E.2d at 1005.  Defendant overlooks that the supreme court made this statement in the context of holding that 
the mandatory enhanced sentencing scheme added to the offense of attempted first degree murder was 
not
 
inherently
 unconstitutional.  
Morgan
, 203 Ill. 2d at 488-89, 786 N.E.2d at 1005.  Defendant's argument also overlooks the unique, pervasive and enhanced danger created by an offender's possession of a firearm, as discussed in 
Hill
 and 
Moore
.  The 
Sawczenko-Dub
 court also discussed these factors at length, noting that a firearm:  gives a perpetrator a strong advantage over the victim; effectively deters the victim's escape; is particularly lethal to the victim of the underlying crime as well as others in the vicinity; allows the perpetrator to effortlessly and instantaneously execute an intent to kill once it is formed; allows an offender to harm a greater number of victims more rapidly than other weapons and inflict deadly wounds on a number of people within a wide area and within a short amount of time.  See 
Sawczenko-Dub
, slip op. at 22-24.  

In short, the issue is not whether it is a more serious offense to discharge a firearm during a murder than to murder by other means.  Rather, the threshold issue is whether deterring the carrying or use of a firearm during a murder is a purpose more specific and distinct from that of the general murder statute.  Following 
Hill
, 
Moore
, and 
Sawczenko-Dub
, this court concludes that the legislative purpose of deterring a person's use of firearms when the person is committing an offense is a more specific and distinct purpose that applies even in murder cases, based on the unique, pervasive and enhanced danger that results from an offender's possession of a firearm.  Accordingly, 
comparative proportionality review is inappropriate in this case.

Citing 
People v. Reed
, 148 Ill. 2d 1, 11, 591 N.E.2d 455, 459
 (1992),
 
defendant claims that the statute violates his right to due process of law because the statute may punish less culpable behavior more severely than more culpable behavior.  This argument failed in 
Reed
; the supreme court noted that the case law Reed cited involved a statute that 
potentially punished 
innocent
 conduct more severely than the culpable conduct defined in a lesser included offense. 
 The 
Reed
 court held that there was a rational basis for 
the legislature to determine that engaging in sexual activity with minors is inherently culpable conduct.  
Reed
, 148 Ill. 2d at 13, 591 N.E.2d
 at 460.  Here, the statute does not punish the act of personally discharging a firearm more severely than it punishes murder; rather, it enhances the sentence for those who personally discharge a firearm during the commission of a murder.  The legislature could rationally conclude that discharging a firearm during the commission of murder is not innocent conduct.

Defendant argues that the enhancement is not reasonably related to the evil that the legislature deemed to be a greater threat to the public.  However, based on the analysis above, it is clear that the enhancement is directly related to 
the unique, pervasive and enhanced danger from an offender's possession or discharge of a firearm during the commission of the offense
.  

Defendant posits the hypothetical case in which a defendant discharges a firearm into the air, while a codefendant stabs the victim to death.  Defendant argues that the defendant in such a case is less culpable, but will receive a harsher penalty than the codefendant who actually caused the victim's death.  The 
accountability statute, if applicable, makes all persons who participate in a common criminal design equally responsible.  
People v. Miller
, 202 Ill. 2d 328, 340
, 781 N.E.2d 300, 308 (2002).  In general, this point would dispatch a defendant's claim to being less culpable.  

There are cases in which the accountability statute may contribute to the imposition of a disproportionate penalty; 
Miller
 is such a case.  However, 
Miller
 involved a 15-year-old defendant who, through operation of the automatic transfer statute, the multiple-murder statute 
and
 the accountability statute, faced a natural life sentence for acting as a lookout to a shooting, despite never even touching 
the guns involved.  In this case, defendant instigated a fight and then shot the victim at least twice.  Thus, this case falls outside the scope of 
Miller
.

In sum,
 defendant has failed to carry the burden of proving the statute at issue imposes a disproportionate penalty or violates his due process rights.

IV

Finally, defendant claims his mittimus must be corrected to reflect 500 days of credit for time spent in presentence custody.  The State concedes the point.

For all of the aforementioned reasons, defendant's conviction is affirmed, but the case is remanded to the circuit court of Cook County for resentencing and correction of the mittimus in accordance with this opinion.

Affirmed in part and vacated in part; cause remanded.

O'BRIEN and HARTIGAN, JJ., concur.

FOOTNOTES
1:  Negron's appeal is pending before this court in appeal number 1-02-3713.