2021 IL App (1st) 182399-U

No. 1-18-2399

Order filed April 9, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 2675 |
| | ) | |
| TORIANO COLLINS, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's sentence over his contention that the trial court improperly relied on evidence not presented at trial in aggravation in imposing sentence.

¶ 2    Following a bench trial, defendant Toriano Collins was convicted of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)) and sentenced to 10 years' imprisonment. On appeal, he contends he is entitled to a new sentencing hearing because the circuit court improperly relied on evidence not presented at trial. We affirm.

¶ 3     Defendant was charged with one count of AHC and six counts of unlawful possession of a weapon by a felon (UUWF), premised on his possession of three firearms and corresponding ammunition, after having been previously convicted of two felonies. Because defendant does not challenge the sufficiency of the evidence, we recite only those facts necessary to our disposition.

¶ 4     The evidence at trial established that, on January 13, 2017, Chicago police officer Sebastian Magiera was undercover, conducting surveillance near the 4800 block of West Monroe Street due to "numerous complaints of drug sales in the area." Magiera observed defendant with two other people standing on some stairs at a nearby apartment building. Defendant was "[a]t times tak[ing] his forefinger and thumb, placing it up to his mouth, assuming in a smoking gesture to pedestrians and vehicular traffic." Defendant also approached several vehicles and exchanged unknown items from his black coat pocket for money.

¶ 5     At some point, defendant's group and another group out of Magiera's sight got into a verbal altercation. One of the men from defendant's group pulled out a gun from his waistband and fired one shot in the direction of the other group. Magiera got on his radio and sent a flash message to other officers in the area. Following the shot, defendant and the others in his group ran inside the apartment building. Through a window, Magiera could see that they ran to the second floor of the building.

¶ 6     Magiera entered the building and could hear a woman saying "open the door." On his way upstairs to the second floor apartment, Magiera saw the two men who had run into the building with defendant. After speaking with the resident of the second floor apartment, Magiera went inside the apartment and observed defendant exiting a bedroom. Defendant's black coat was on the bed in the bedroom. There was also a safe, which contained three loaded

semiautomatic handguns, money, and various documents belonging to defendant, including his birth certificate and social security card.

¶ 7 Sergeant Lazara Altamirano corroborated Magiera's version of events inside the apartment building but added that cannabis had also been recovered from the bedroom. Altamirano responded to a call at the apartment, which stated that officers observed individuals that they believed to be armed running inside a residence. Altamirano testified that one of the firearms appeared to have a "50-round drum magazine." He inventoried the contents of the safe.

¶ 8 Forensic testing on the firearms showed DNA suitable for comparison was found on two of the three firearms, and defendant's DNA could not be excluded. The State introduced two certified prior convictions for defendant: a 2013 conviction for delivery of a controlled substance in case number 13 CR 12839 and a 2015 conviction for unlawful use of a weapon by a felon (UUWF) in case number 15 CR 00095. The court also admitted photographs of the recovered firearms.

¶ 9 The circuit court found defendant guilty on all counts and merged the UUWF counts into the AHC count. It subsequently denied defendant's motion for a new trial.

¶ 10 At defendant's sentencing hearing, the court noted it had read and "highlight[ed]" defendant's presentence investigation report (PSI). Defendant's PSI revealed he had three juvenile adjudications: two 2010 adjudications for possession of a controlled substance and a 2012 adjudication for possession of cannabis. He had three prior convictions, including the convictions used at trial: a 2013 delivery of a controlled substance conviction and a 2015 UUWF conviction, for each of which he received a three-year sentence. The third conviction was a 2014 conviction for possession of a controlled substance for which he received a one-year sentence.

The PSI showed defendant's highest level of education was 10th grade, he had a child who resided with the mother, and he denied gang involvement but CPD's "CLEAR" system showed he was affiliated with the Mafia Insane Vice Lords gang. Defendant was expelled during his junior year of high school after he was arrested and incarcerated. He then attended an alternative school for a year before he quit.

¶ 11    Defendant had an older sister and two younger half-siblings. One of his younger siblings shot and killed himself in November 2014. Defendant had a close relationship with his other siblings. His father was not active in his life. Defendant's mother raised him, and he had a "normal and respectful relationship with her." Defendant reported he had a normal childhood, free of abuse and neglect, and he did not use drugs or alcohol.

¶ 12    In aggravation, the State noted defendant's prior criminal history and argued the seriousness of the offense.

¶ 13    In mitigation, defense counsel argued defendant was only 22 years old and had great rehabilitative potential. Counsel argued it was "entirely plausible" that defendant had only touched the guns to put them in the safe. Further, defendant had been respectful and spent time in the jail library researching his case. Moreover, counsel emphasized defendant grew up without his father consistently in his life and suffered trauma, including being raised by a single mother in a difficult neighborhood and the 2014 death of his brother. Counsel requested the minimum sentence, so that defendant could leave prison while still a young man and able to change the direction of his life.

¶ 14    In allocution, defendant stated he had been going to school while in jail and was awarded second place in a chess tournament. He asked the court for mercy so he could have a "second chance."

¶ 15    The court imposed a 10-year sentence. In imposing sentence, the court referenced defendant's criminal history, noting his juvenile adjudications were not necessarily aggravating, but demonstrated defendant had "an antisocial-type personality." It stated probation officers often work with juvenile offenders to try to curb their criminal behavior, but it "obviously" did not work with defendant. To the contrary, the court noted defendant's criminal behavior was not "slowing down" but rather going in the "wrong direction" as he continued to be "involved in narcotics and apparently a delivery," pointing out defendant's several adult prison sentences for drug-related offenses. The court also pointed out that, in 2015, defendant was convicted of a firearm offense while out on bond for a drug possession case. It told him the drugs were leading him to weapons, that he would not need firearms to protect himself from the people who prey on drug dealers if he "didn't engage in the criminal drug-related behavior."

¶ 16    The court also referenced the PSI and noted defendant's family history, the lack of abuse in his childhood, his child, and that he had been "thrown" out of school after being arrested. Although the court stated it would not hold against defendant what the PSI stated regarding his gang affiliation, it noted his behavior and possession of weapons was a "strong indicator" that he was "probably" a "member of some kind of gang." It stated defendant reported he did not use drugs yet he was convicted "over and over for drugs," which told the court defendant was a drug dealer rather than a drug user.

¶ 17    In reference to the instant offense, the court stated:

"The day in question, you know, whatever you're doing out there, the police are observing suspect activity, might be narcotics related and all the sudden one of your guys, you know, decides to fire off a round at another individual, broad daylight out on the street. ***

In any event, so then when you and your fellows see the police are there, you flee, you run away. And had you not run, had you just stayed there, had you not done anything, that would have been the end of it. The police wouldn't have -- you know, they might have placed you under arrest. Eventually though, there wouldn't have been any charges against you. But your interest in defeating law enforcement and protecting your drug trade operation probably and helping out your cohort with a gun caused you to flee some place and it's a reasonable inference to help try to dispose of or hide the gun so that the police couldn't recover it. And you put it in the worst place you could have because you put it where it tied you to the crime of what was in that safe. And that was three guns."

¶ 18    The court additionally noted the seriousness of the offense, specifically referencing a photograph of one of the guns, which could shoot 50 rounds. The court stated,

"[I]t's like a comic book thing. It's a pistol that looks like it should be attached to an Uzi or some kind of World War 2 weapon. What are you doing to do with that kind of gun? Who deals with this kind of gun? There's no legitimate purpose in the world to possess a gun like that. Absolutely none. It's impractical for anything but shooting up whole neighborhoods, shooting up a series of other individuals that you're at war with or

that you're in conflict with. And you can just shoot and shoot and shoot until 50 rounds go off. I mean, that's just an amazing photograph. That's one of the guns in the safe." The court did not think defendant had "any realization of what [his] behavior was potentially going to cause, what kind of havoc that weapon and other weapons were going to do on the streets of Chicago," noting the prevalence of gun violence in the city.

¶ 19 Finally, the court acknowledged defendant's father had not been present in his life and his brother's suicide was a tragedy. However, it found there was "far more aggravation than mitigation" and did not "see [defendant] being a great candidate and having great potential for rehabilitation."

¶ 20 Defendant filed a motion to reconsider sentence, arguing his sentence was excessive, the court improperly considered in aggravation matters that were implicit in the offense, and improperly penalized him for exercising his right to trial. The court denied his motion. Following the denial, the court urged defendant to consider participating in a program called "Thinking for a Change," which could be beneficial in helping him "appreciate the consequences of [his] actions and how they affect [him] and other people."

¶ 21 On appeal, defendant argues the trial court's statements regarding him fleeing from police and helping his friend hide the firearm used to fire the shot were not supported by the evidence adduced at trial. Thus, defendant maintains, the court's reliance on unproven aggravating facts at sentencing resulted in an unfair sentencing hearing. He asks this court to remand his case for a new sentencing hearing.

¶ 22 Defendant acknowledges that defense counsel did not object to this error and include it in his motion to reconsider sentence. However, he asks that we review it under both prongs of the

plain error doctrine. To preserve a claim of sentencing error, a defendant must make a contemporaneous objection and file a written posttrial motion raising the issue. *People v. Hillier,* 237 Ill. 2d 539, 544-45 (2010). However, under the plain error doctrine, "[p]lain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 23    In the sentencing context, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545 (citations omitted). "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *Id.* This is because without reversible error, "there can be no plain error." *People v. Mitchem*, 2019 IL App (1st) 162257, ¶ 37.

¶ 24    We find defendant has not met the threshold requirement for plain error review, which is demonstrating that clear or obvious error occurred. *Hillier*, 237 Ill. 2d at 545.

¶ 25    AHC is a Class X felony with a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7(b) (West 2016) ("Being an armed habitual criminal is a Class X felony."); 730 ILCS 5/5-4.5-25 (West 2018) (sentencing range for Class X felonies is 6 to 30 years' imprisonment). Defendant was sentenced to 10 years. His sentence is within the statutory guidelines, so we presume it is proper. See *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36.

¶ 26    Defendant maintains that the circuit court relied on improper aggravating evidence when it stated he was fleeing from police and helping his associate hide the firearm used to fire the shot, inferences for which there was no evidentiary support in the trial evidence.

¶ 27    The parties disagree as to the standard of review. Defendant argues we should review whether the trial court relied on an improper sentencing factor *de novo* (citing *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 46) while the State argues we must review this issue for an abuse of discretion (citing *People v. Streit*, 142 Ill. 2d 13, 18-19 (1991)). However, we need not belabor that question because, under either standard, we would find defendant is not entitled to resentencing.

¶ 28    Under the Illinois Constitution, the trial court must impose a sentence that balances the seriousness of the offense and the defendant's rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In doing so, the court must consider aggravating and mitigating factors, including "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education." *Id.* A court need not discuss each relevant factor or articulate the basis for the sentence imposed; it is presumed that the court considered the evidence in imposing the defendant's sentence. *People v. Averett*, 381 Ill. App. 3d 1001, 1021 (2008).

¶ 29    A trial court cannot ignore a mitigating factor, nor can it consider an improper aggravating factor (*People v. Higgins*, 2016 IL App (3d) 140112, ¶ 29), such as an aggravating factor based on speculation (*People v. Zapata*, 347 Ill. App. 3d 956, 964 (2004)). However, a reviewing court can affirm a sentence despite an improper factor if the record shows the weight placed on that factor was so insignificant it did not result in a greater sentence. *People v. Heider*, 231 Ill. 2d 1, 21 (2008). We do not focus on isolated statements; rather, we consider the record as a whole. *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18. It is the defendant's burden to

affirmatively show the sentence was based on improper considerations, and we will not reverse a sentence imposed by the trial court unless it is clearly evident the sentence was improperly imposed. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 30    Here, looking at the record as a whole, we do not find that defendant's sentence was improperly imposed. Even assuming the court's comments regarding defendant fleeing from police or hiding his associate's weapon were improper inferences from the evidence, the record does not show that the weight the court placed on those comments was so significant that it led to a greater sentence. See *People v. Heider*, 231 Ill. 2d 1, 21 (2008) (sentence based on an improper factor may be affirmed where review of the record "establishes that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence").

¶ 31    Rather, the record reflects the court properly considered all the relevant sentencing factors, including the information in the PSI report, defendant's criminal history and background, and the nature of the offense. The court made the allegedly improper comments in discussing the circumstances of the offense, explaining to defendant that, had he stayed at the scene instead of fleeing after one of his "guys" fired the shot in broad daylight, he would probably not have been charged, and that by fleeing he made the situation worse. Circumstances of the offense are proper considerations at sentencing. *Knox*, 2014 IL App (1st) 120349, ¶ 46 (the nature and circumstances of the crime are relevant sentencing factors). The court also considered the seriousness of the offense, emphasizing that the 50-round weapon in defendant's possession was especially dangerous, "impractical for anything but shooting up whole neighborhoods, shooting up a series of other individuals that you're at war with or that you're in conflict with." See

*People v. Contursi*, 2019 IL App (1st) 162894, ¶ 24 (the seriousness of the offense is the most important sentencing factor).

¶ 32    The court also noted defendant's failure to realize the seriousness of the offense, "what kind of havoc that weapon and other weapons were going to do on the streets of Chicago." See *People v. Matute*, 2020 IL App (2d) 170786, ¶ 59 (a sentencing court may infer lack of remorse from "the manner of commission of the offense" or "any other competent evidence adduced at trial or at the sentencing hearing"). The court emphasized defendant's escalating criminal behavior, demonstrated by his failure to curb his criminal behavior after his juvenile adjudications and the fact that he now had not only drug convictions but weapons convictions. The court balanced the seriousness of the offense with defendant's potential for rehabilitation, finding there was far more aggravation than mitigation and concluding defendant's behavior and background did not show he had great rehabilitative potential. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995). ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation.").

¶ 33    In sum, the record as a whole shows that, although the court mentioned defendant's flight from police and attempt to hide the fired weapon, it did not place significant weight on these inferences. Rather, the court carefully considered the proper sentencing factors and based defendant's sentence on all those factors. The court did not err at sentencing. There is, therefore, no plain error.

¶ 34    Defendant argues alternatively that defense counsel was ineffective in failing to object to the trial court's mischaracterization of the evidence and include the issue in defendant's motion to reconsider his sentence. He claims he was prejudiced because, had the court realized it was

recalling the evidence incorrectly, he would have likely received a lesser sentence. Claims of ineffective assistance of counsel are governed by the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). To succeed on such a claim, a defendant must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that there exists a reasonable probability that, absent the errors, the outcome would have been different. *Strickland*, 466 U.S. at 687. Because we have concluded defendant's sentence was proper, he cannot demonstrate he was prejudiced by counsel's failure to raise this issue in his motion to reconsider sentence. Accordingly, his ineffective assistance of counsel claim fails.

¶ 35    We affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.